## Van Winckler *v.* Morris, Appellant (No. 1).

*Negligence—Automobiles—Excessive speed—Skidding.*

Where a person in driving an automobile on a slippery asphalt pavement straddles a street car rail, and suddenly turns his car with such speed that a wheel catches in the rail, and the whole body of the car skids across an intervening space of eighteen feet over the curb and onto the pavement, and strikes and injures a woman standing on the pavement two feet inside the curb, the owner of the car will be responsible for the injuries sustained by the woman.

Argued Dec. 20, 1910. Appeal, No. 190, Oct. T., 1910, by defendant, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1907, No. 5,193, on verdict for plaintiff in case of Linda M. Van Winckler et al., v. William Morris. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injury. Before KINSEY, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for Linda M. Van Winckler for $1,500, and Herbert Van Winckler for $500. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Frank R. Shattuck*, with him *G. D. Bartlett*, for appellant.

*Augustus Trask Ashton*, for appellees.

OPINION BY ORLADY, J., March 3, 1911:

The plaintiff while waiting for a street car at the corner of prominent streets, and standing on the pavement about two feet inside of the curb, was knocked down and run over by an automobile.

The defendant testified with exceptional candor, and it is urged that the jury should have been directed to return a verdict in his favor, because the unfortunate accident was due to unexpected and unavoidable causes for which he should not be held responsible.

He had ten years' experience in driving his own car from 75,000 to 100,000 miles. This car was a new one of forty-eight to fifty horse power, it was in perfect condition and equipped with the latest anti-skid, and safety appliances. He was going westward on a wide two track street, about three o'clock in the afternoon with his car straddling the northern rail, and when about 100 feet from the cross street he turned his car so as to use the space between the car tracks and the curb, which space was about eighteen feet in width and paved with asphalt. The weather was muggy and the road was slippery. In turning from the car track the front wheels crossed the rail in safety, but the rear wheel caught and the whole body of the car skidded at right angles to the track with such violence that it mounted the curb, and, as described by the defendant, "both side wheels were up and the car was standing in its proper direction. It really made what looked like a flying jump." While in this position the car moved forward about seven feet, knocked the plaintiff down, ran over her, and was stopped by running against a heavy iron fire plug.

He testified that he was going "very slow," "at a speed of eight to ten miles an hour" which he considered safe, and that he had his machine under perfect control when he turned from the car track. A witness for the plaintiff, who was driving a heavy wagon in the eighteen feet roadway, testified that the defendant "came along the car track, and shot in ahead of me . . . . he was going at a pretty good rate . . . . the car shot upon the pavement, hit the girl, knocked her down and up against the fire plug and wedged there." The actual speed of the car when it left the car track was doubtless between these conjectural estimates. Every reasonable deduction to be drawn from the defendant's own testimony leads to but

one conclusion, that the accident was entirely due to the speed of the car when it left the car rail to occupy the wet asphalt. His experience and the conditions he faced required him to exercise special care at that time. He did not slacken his speed, and his idea of what was perfectly safe, and very slow, was demonstrated to be an unsafe standard of his duty. State and city regulations as to speed apply· to the general and average conditions. These vary, and the measure of duty, the degree of care, and correspondent liability are to be determined by the jury in the light of the surrounding circumstances. The rate of eight to ten miles per hour is generally a prudent one, but conditions may, and frequently do arise where it is an imperative duty to come to a full stop. The jury was fully warranted in concluding that when the defendant left the car track, with his heavy car going at the admitted speed, to occupy a wet asphalt roadway, he was negligent to a degree bordering on recklessness. An inanimate body of the weight of a heavy automobile, will not take a "flying jump" over a curb on to a pavement unless propelled by exceptional force. This was within the power of the defendant to regulate, and the verdict returned was the only one to be expected from men of common sense and common observation of such matters.

The judgment is affirmed.