## Barrage *v.* Philadelphia & Reading Railway Company, Appellant.

*Negligence—Railroads—Sitting under car in yard.*

1. Where a person engaged in loading and unloading cars in a railroad yard goes under a standing car in the yard for shelter from rain which did not begin until fifteen or twenty minutes afterwards, and while sitting under the car and eating his lunch, the car is struck by a shifting train, the man is guilty of contributory negligence and he cannot recover damages from the railroad company for the injuries sustained; and his contributory negligence is all the more apparent from the fact that there were two other places perfectly safe where he could have taken shelter from the rain, and also from the fact that he knew that a shifting train was operating in the yard at the time.

2. In such a case the railroad company cannot be charged with negligence where it appears that the conductor of the shifting train did not know of the presence of the workman under the train, that his view was obstructed by material along the tracks which prevented observation under the cars, and that he used the ordinary precautions observed in similar movement of cars on the tracks in question.

Argued Nov. 19, 1914. Appeal, No. 130, Oct. T., 1914, by defendant, from judgment of C. P. Chester

Co., Aug. T., 1913, No. 62, on verdict for plaintiff in case of John Barrage v. Philadelphia & Reading Railway Company. Before Rice, P. J., Orlady, Head, Kephart and Trexler, JJ. Reversed.

Trespass to recover damages for personal injuries. Before Johnson, P. J., specially presiding.

The facts relating to the accident are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant and (2) in refusing defendant's motion for judgment n. o. v.

*Arthur P. Reid,* with him *R. T. Cornwell,* for appellant. —There was no negligence shown: Politowski v. Burnham, 214 Pa. 165; Phila. & Reading Ry. v. Hummell, 44 Pa. 375; Keller v. Phila. & R. Ry. Co., 214 Pa. 82; Gallagher v. B. & O. R. R. Co., 52 Pa. Superior Ct. 569.

Defendant was guilty of contributory negligence: Collins v. Second Ave. Traction Co., 7 Pa. Superior Ct. 318; Brague v. Northern Cent. Ry. Co., 192 Pa. 242; Bailey v. Lehigh Val. R. R. Co., 220 Pa. 516; McMullen v. Penna. R. R. Co., 132 Pa. 107; Cypher v. Huntingdon & Broad Top, etc., R. R. Co., 149 Pa. 359.

*William Tregay,* with him *W. E. Greenwood,* for appellee.—The case was for the jury both on the question of negligence and of contributory negligence: Schum v. Penna. R. R. Co., 107 Pa. 11; Fisher v. Monongahela, etc., Ry. Co., 131 Pa. 293; Cramer v. Aluminum Co., 239 Pa. 120; Sulger v. Phila. & R. Ry. Co., 245 Pa. 128; Brown v. Lynn, 31 Pa. 510; Reeves v. Del., L., etc., R. R. Co., 30 Pa. 454; Carey v. Chicago, R. I. & P. R. Co., 46 L. R. A. (N. S.) 877; Bruce v. Michigan C. Ry. Co., 172 Mich. 441.

OPINION BY KEPHART, J., March 11, 1915:

The plaintiff was employed for two and one-half days as a laborer in the yards of Joseph Josephs' Bros., loading and unloading scrap iron from cars placed upon their side tracks. The yard was composed of six separate tracks, converging into one siding at its west end and connected with one of the defendant's branch lines. The cars upon which the plaintiff was working on the day of the accident were immediately in front of the shear shed, being a house inclosing a large pair of shears used for cutting the scrap iron into lengths. This shed was about twelve feet from track or siding number five. Engaged with the plaintiff were a number of workmen unloading a car of scrap. About ten o'clock in the morning a rain storm threatened, when the plaintiff, with others, took refuge under one of the cars on which they were working. The plaintiff, after he had stepped from the car, ran up the track a short distance, secured his dinner bucket, and went with it under one of the cars. He was seated between the rails with his back against one of the axles of the car truck, eating a lunch, when the cars were struck by the shifting train. Prior to this the defendant's shifting crew was engaged in shifting cars in the yard, and, acting under the directions received from the superintendent of the plaintiff's employer, they moved cars from the storage siding adjoining the siding on which the cars, which plaintiff had taken refuge under, were located. In moving the cars on this siding against the cars under which plaintiff was sitting, the impact caused the cars to be moved from four to eight feet, causing the injuries for which this suit results.

In a careful review of the facts, giving the plaintiff the benefit of each inference fairly arising therefrom, notwithstanding the able and ingenious argument of the learned counsel for the appellee, we are led to the conclusion that the plaintiff was guilty of contributory negligence. We are not convinced that any doctrine

enunciated by the appellate courts sustains the principle that where a person crawls under a railroad car to avoid a rain storm he would not be guilty of contributory negligence. When the duties of an employee require him to be engaged under a railroad car, he must observe reasonable rules for his own protection, and if injury results through failure to observe such rules, the employee is responsible for the accident that may follow to him. His failure to take the necessary precaution will not relieve him: Cypher v. Huntingdon and Broad Top R. Co., 149 Pa. 359. Unless the duties of the employee engaged about a railroad car demand that he go under the car, or the circumstances of his employment are such that through an emergency he must be under a car for a short time, it is no place for him. In the case at bar, neither the duties nor the emergency presented justified the act of the employee. The bottom of a railroad car is not intended as a rain shelter, nor is the space between the rails up to the axles of the car a place to eat lunch. Standing idle, unmolested, the car may be perfectly harmless, provided it is on a level grade with the brakes set, but as the facts in this case develop, the cars were standing on a grade with a shifting crew working in the yard on an adjoining track not over fifty feet away, with the possibility that their train might come upon this track at any time, increasing the hazard. It was, to say the least, an extraordinarily dangerous place to be. The fact that the cars were not to be disturbed except as ordered by the plaintiff's employer, and then only to be moved by their own traveling crane, after notice given by the employer to his employees, does not eliminate the possibility of the defendant's engine and cars going on that siding and striking those cars. The agency which caused the injuries is not as important as the knowledge that the accident was within the reasonable probabilities patent to any thinking individual. Here the employer directed the movement of the train and the train was accustomed

to frequently go upon this siding. From the testimony we have this plaintiff, engaged at this work but a short time, seeking shelter from a threatened rain storm, under a car, sitting on the ground between the rails, with his back to the axle, eating a lunch, from ten to fifteen minutes before the rain actually started. It was a hard rain, lasting but a short time, when the shifting crew, who did not seem to be disturbed by the rain, moved their cars back and struck the cars, causing the plaintiff's injury. Some of his fellow employees testified that they took shelter under the piles of scrap iron located in the yard; others were in the shear shed. From the description of this shed, located so close to the track at which these men were working, and the machinery installed therein, the building was sufficiently large to hold all of the employees that went under the car. One of the witnesses for the plaintiff excused this failure by saying that they were not welcome in the shed. Their chances were very much better there than under this railroad car. The plaintiff had practically fifteen minutes to find comparatively safe shelter from the rain, as others had found it. He selected the only dangerous place of the many presented. Where a person has an opportunity of selecting a safe place to work or for shelter, and out of the three possible places selects the only one of visible danger, he cannot recover: Collins v. Second Ave. Traction Co., 7 Pa. Superior Ct. 318; Bailey v. Lehigh Val. Railroad Co., 220 Pa. 516. That the skids and gangway were against the car would not relieve the plaintiff from exercising care on his part in selecting a safe place for shelter until after the storm. The presence of these skids would not relieve the possibility of the train moving against these cars, and with the skids erected, the negligent operation of the train against the cars while in this condition cannot be complained of by the plaintiff when his own want of care was the circumstance that made the injury possible. If the plaintiff had been under the car in the performance of an act within the scope of his employ-

ment he would have been required to protect himself by placing up some flag or signal to warn approaching trains or engines that he was engaged under the car. A recent case on much the same lines, decided by the Supreme Court of Kansas (Carey v. Chicago, R. I. and P. R. Co., 84 Kansas, 274; 114 Pac. Repr. 197) where a quarryman found shelter beneath a car from the rain and was run over and killed by a freight train backing into the cars, in the process of picking them up, the cars being located upon a separate track near where the men were at work, the court say: "Here the train men owed no such duty to Carey inasmuch as they did not know of his presence, and had no reason to suppose that any person would be under the cars. Liability for negligence can result only from the violation of a duty owed to the person injured. . . . We do not think the fact that the train men saw a workman in one of the cars, and heard the voices of others, was sufficient to suggest to them the probability of anyone being under the cars." "Where the issue of contributory negligence has been submitted to the jury, a finding in favor of the plaintiff will not be set aside unless, upon a review of the evidence in the light most favorable to the plaintiff, it is inconceivable that a mind desiring only a just and proper determination of the question could reasonably reach any other conclusion than that the plaintiff had brought about or contributed to the injury by his own carelessness. That is, after determining all doubts and drawing all inferences in favor of the plaintiff, it must be clear that he was guilty of contributory negligence before it can be so ruled as a matter of law:" Cramer v. Aluminum Co., 239 Pa. 120; Sulger v. Phila. & R. Ry. Co., 245 Pa. 128. But where the deductions from the evidence establish conduct utterly devoid of all effort to respect the salutary rules of self-preservation, conspicuously brought before the mind from the obvious danger of the act committed, it then becomes the duty of the judge to force an observance of these rules by

holding the injured party responsible for his own thought-lessness or carelessness.

Was the negligence of the defendant shown? The defendant was using this particular track of the plaintiff's employer, through their specific orders, and through a license from them. The uncontradicted evidence shows that the crew used the ordinary precaution observed in similar movements of cars on those tracks. The scrap was piled between the several tracks in such manner as to prevent observation under the cars, and from the plaintiff's testimony he could not be seen by persons walking towards the car from the direction in which the train was moving, nor could they see the train approaching from where they were sitting. Before the rain, while the conductor was working on the adjoining track, he noticed these men working on this car. This would not charge him with notice that the men intended to get under the car when the rain came up. The conductor walked between tracks four and five to a point immediately opposite the two cars under one of which the plaintiff was sitting. He looked for the men on the cars and not seeing any he gave the signal for the train to move back. "A jury cannot be permitted to find anything negligence which is less than failure to discharge a legal duty:" Politowski v. Burnham, 214 Pa. 165. And it surely was not the duty of the conductor to get down and look under the car to ascertain if there were men under there before making his coupling. The manner in which the scrap was piled around the cars and between the tracks prevented the conductor from having clear vision on track five. His train would have to come up this track. He walked between tracks four and five, and this iron prevented him from seeing the skids erected on the opposite side, next to the shear house. They did not ring a bell or sound a whistle and under the circumstances they were not required to do so. The use of these tracks as sidings for the constant moving of cars would not require the bell to be

rung or the whistle to be blown: Keller v. Phila. & R. Railroad Co., 214 Pa. 82; Leithold v. Phila. & R. Railroad Co., 47 Pa. Superior Ct. 137; Gallagher v. B. & O. Railroad Co., 52 Pa. Superior Ct. 568. From the testimony of John Gray, who was between the cars at the time the shifting crew struck them, and other testimony on part of the appellee, it is evident that the manner in which the coupling was made was not wanton or reckless. When the engine pushed the eight loaded cars up the incline against the two cars it necessarily required considerable force. The striking of the two cars, causing them to move from four to eight feet, was not shown by the testimony to be a wanton, reckless coupling or that the train was moving rapidly when the coupling was made.

After carefully considering all of the evidence, the first assignment of error asking for binding instructions in the court below is here sustained, as is also the second assignment of error predicated on the request for binding instructions, wherein the court below is asked to enter a judgment n. o. v. The judgment of the court below is reversed and is here entered for the defendant.