## Toole v. Erlanger Fair Association.

(Decided February 20, 1925.)

Appeal from Kenton Circuit Court
(Criminal, Common Law and Equity Division).

1.  Theaters and Shows—Spectator Assumes Risk in Place Not Provided for Him.—A spectator at a place of public entertainment or amusement who, without compulsion, goes to some part of the place or grounds at which spectators are not invited or expected to be, assumes risk of any resultant injury.

2.  Master and Servant—Risk from Obvious Danger Assumed.—An employe, directed by superior to go into place of obvious danger, they both recognizing danger, assumes risk notwithstanding such direction.

3.  Agriculture—Plaintiff Held to have Assumed Risk of Injury from Runaway Race Horse by Going Into Place of Obvious Danger.—Where one scheduled to participate in a motorcycle race at a fair, before horse races had been completed, tested his motorcycle on race track, but, upon being informed that he was premature, stationed himself in a place which was unprotected, held that he assumed risk of injury from a runaway race horse, notwithstanding alleged direction by race official and secretary of fair to go to such place.

H. W. ROOT and GRAZIANI & ROOT for appellant.

O. M. ROGERS for appellee.

Opinion of the Court by Turner, Commissioner— Affirming.

Appellant was a patron of the Erlanger fair at its annual exhibition in August, 1921. He had arranged the night before to be a participant in a motorcycle race to be had on that afternoon on the half-mile track of the fair association, but had gone to the fair and paid his admission fee.

The motorcycle race was not to come off until after all the horse races had been completed, and until after what he thought was the last horse race had taken place he remained either in the grand stand or in that portion of the grounds set apart to spectators. However, after the next to the last horse race he and others . who were to participate in the motorcycle race went on the half-mile track and ran their machines around three or four times, they at the time assuming that the next race was the motorcycle race. After they had so run their machines around the track they were finally halted at or near the grand stand and told by the secretary of the Fair Association to take their machines off the track, that there was yet another horse race to be had before the motorcycle race should take place. They had an argument with the secretary about the matter, and then March, who had control of the motorcycle race, and with whom the proposed participants therein had made their entries, was called into the controversy. Marsh also directed them to get off of the track with their machines, which they did, going into a small opening a few feet wide next to the judges' stand, which was just inside the oval formed by the track, and just opposite the grand stand on the outside of the track.

On the outside of the track was a fence all the way around, and on the inside of the track there was a fence all the way around, except for two small openings of a few feet on each side of the judges' stand.

When the prospective participants in the motorcycle race were thus directed to leave the track with their machines, instead of going back to the grand stand or that portion of the grounds from which they had just come, they took their machines into one of these openings alongside of the judges' stand on the inside of the track with full knowledge that the horse race was just about to take place. During the race one of the horses bolted and ran into this opening and injured appellant.

In this action for damages against the Fair Association the plaintiff alleges that when he was so directed by an officer and agent of the company to leave the track with his motorcycle he was directed by such officer and agent to go with his machine to the said infield at a point near to and behind the judges' stand and remain there until the horse race was finished, and that he did so, and because of the defendant's negligence in failing to provide at that point a barrier, fence or obstruction, one of the horses ran into that open space and upon and against him.

The answer was a traverse, and relied upon assumed risk and contributory negligence.

Upon the trial, at the conclusion of the plaintiff's evidence, the jury was directed to find a verdict for defendant.

The plaintiff's own evidence is that he was directed by Marsh to go into this opening next to the judges' stand with his machine and wait until the horse race was over, and he testifies that Davis, the secretary, directed Marsh to so tell him and the other motorcyclists, and that they accordingly did as they were directed. He admits that he went into this opening alongside the track, which was not protected by any barrier or fence, and that he knew the horse race was immediately impending is clear from his recitation of the conversation between him, Davis and Marsh.

The only quesiton we deem it necessary to consider is whether under these facts appellant assumed the risk of thus stationing himself, during the impending horse race, at a place near to the track and unprotected by barrier or fence.

The place was open, he had just passed through it, and he knew that the horses in the race to be presently run must pass right alongside that open space. He knew that patrons of the fair were not supposed to be on that side of the track, and notwithstanding the direction so given him by Davis and Marsh, he knew of the danger of that position as well as any one. Although he testified that Davis and Marsh directed him to go into this place, Marsh, his own witness, testified that the direction was simply to get off the track and take his machine off. However this may have been, he was in possession of the facts and as well qualified to judge of the danger as they or any one else; the material thing was

for him to take his machine off the track, and the circumstances fail to indicate that there was any compulsion used upon him requiring him to go into this unprotected place, when he might have gone to the other side of the track where patrons and spectators were supposed to be, and where they were amply protected.

A spectator at a place of public entertainment or amusement, who without compulsion goes to some part of the place or grounds to which spectators are not invited or expected to be, and there encounters a danger which he would not have encountered had he remained at a place provided for spectators, assumes the risk of any such danger or resultant injury.

Here appellant, a spectator who had paid his entrance fee like other spectators, was supposed to be in the grand stand or upon some part of the premises open to such patrons. Instead he, erroneously assuming that the motorcycle race was on, entered upon the track with his machine, and when notified that there was yet another horse race to be conducted before the motorcycle race, without compulsion left the track and went to an open space on the inside of the track where it may be expected that wild and unruly horses engaged in a race may bolt and become dangerous. We find nothing in the plaintiff's own evidence which indicates that he was compelled to go into the open space rather than take his machine to the outside where he would have been safe.

But if he and the officers of the association had at the time sustained the relationship of master and servant, which they did not, still it is a well recognized rule that an employe who is directed by his superior to go into a place of obvious danger, they both recognizing the danger, he assumes the risk notwithstanding the direction.

The case of Blakeley v. White Star Line (Mich.), 19 L. R. A. (N. S.) 772, was where a patron at a public amusement park was injured by a base ball at a place on the premises where base ball was not customarily played and the court upheld the right of recovery because the plaintiff was shown at the time of his injury to be at a place in the park where base ball was not supposed to be played, but in discussing the assumption of risk in such cases, said:

> "Plaintiff was invited to the defendant's park or pleasure ground to spend the day. In so far as

various sports were allowed to be carried on in places alloted for them, visitors who went to the vicinity of these places to witness the sports undoubtedly assumed the risk of danger. In this case the defendant had marked off the grounds for the game of base ball. It is knowledge common to all in these games hard balls are thrown and batted with great swiftness; that they are liable to be muffed or batted or thrown outside of the lines of the diamond, and visitors standing in position that may be reached by such balls have voluntarily placed themselves there with knowledge of the situation, and may be held to assume the risk."

Clearly this case comes within the rule there stated; appellant was in full possession of the facts, and having the alternative either to go to a place of safety or one of some danger, he elected to go to the latter, and necessarily assumed the risk of so doing.

Judgment affirmed.