## Judd v. Scranton Republican et al.

*Stanley F. Coar* and *Arthur J. Lavelle*, for plaintiff.

*John M. McCourt* and *Walter W. Harris*, for defendants.

HOBAN, J., June 22, 1938.—The Scranton Republican, a daily newspaper published in the City of Scranton, sponsored, promoted, and managed a race called a "soap box derby", on August 3, 1934. The race was held on Luzerne Street, a public street in the City of Scranton. The other defendants, Robert Davenhall, aged 10, and Daniel Day, aged 12, were contestants in the race. This race was one of a series of races held throughout the country, usually sponsored by a newspaper or other publicity agency in various cities, and the contestants were limited to young boys driving or riding in homemade four-wheel wagons built to resemble automobiles in general contour but without any driving mechanism, being propelled by gravity only. The testimony indicates that due to the slope of the hill on Luzerne Street, where the race was run, the vehicles were able to obtain a speed as high as 40 miles an hour.

Plaintiff was a spectator at the race. He had stationed himself along the easterly curb line of Luzerne Street at a point directly opposite the finish line and had been at this spot for over two hours during the conduct of the races. As the various heats were run prior to the final heat, in which the young defendants were contestants, the crowd of spectators assembled near the finish line would surge forward into the streets, moved of course by the excitement incident to the races and the natural desire to obtain a closer view of the contestants as they approached the finish line. There were no ropes or barriers at the point in question to restrain spectators from

moving into the street, although police protection was provided and the racers in each heat, and particularly the final heat, were preceded by two policemen mounted on motorcycles and also followed by two other motorcycle policemen riding near the edge of the streets, for the obvious purpose of preventing the crowd from swarming over the race course. The testimony indicates that along the course and along the banks back of some portions of the abutting sidewalks some forty thousand people were gathered, viewing the events.

The street was marked out for four lanes to accommodate the racers. In the final heat the winner, William McAndrew, traveled on the westerly center lane, that is, the center lane on the half of the street fartherest from plaintiff's position. Davenhall and Day were riding in the lanes nearest to plaintiff. As the winner approached the finish line, the crowd, including plaintiff, again surged forward into the street, a distance variously estimated as three to ten feet. The winner passed across the finish line. Davenhall and Day were some distance in the rear, but as the crowd was in front of them, they were unable to stop their cars, due to the speed that they were going, and crashed into the crowd, both of them striking plaintiff. The accident resulted in serious injuries to plaintiff, hence this suit.

The trial judge, the writer of this opinion, on the foregoing state of facts and after appropriate motion by counsel for defendant, the Scranton Republican, granted a nonsuit as to the Scranton Republican. Defendants, Davenhall and Day, were not represented by counsel, although present at the trial, and the trial judge of his own volition also directed compulsory nonsuits to be entered as to these defendants. The trial judge believed at the time that there was no actionable negligence, which was the proximate cause of the injury to plaintiff, Maurice Judd, on the part of the Scranton Republican, nor did he consider that there was any proof of negligence on the part of

either of the minor defendants in the operation of their vehicles in the race.

The theory of plaintiff seemed to be that it was the duty of defendant, the Scranton Republican, as promoter and manager of the race, to anticipate the behavior of spectators under the excitement incident to the contests and to provide barriers or some other form of protection which would prevent just such crowd movements and such circumstances as resulted in this instance. But whether the trial judge was correct or not in ruling that defendant, the Scranton Republican, was without negligence in its management and control of the race so far as this plaintiff was concerned, it is quite obvious that plaintiff must have been fully aware of whatever danger defendant was bound to anticipate. In fact, the behavior of the crowd around the finish line, of which plaintiff was one, during many of the races which preceded the final heat must have made the danger apparent to him as a matter of experience, if not foreseeable as a matter of reason. When he chose to place himself at the position he selected and to remain there, he must be held to have assumed voluntarily whatever risk was incident to his position. One could scarcely conceive a more apt illustration for the application of the maxim, volenti non fit injuria, and the cases have uniformly accepted the principle that one who places himself as a spectator in positions of danger at athletic contests, horse races, and similar events, and is injured by some occurrence in the progress of the race, game, or contest, may not recover therefor, unless the contestant was guilty of negligent conduct in his manner of play or in the operation of the instrumentalities used in the contest; in other words, in all contests involving the use of speed, violent effort, animals, etc., there is an element of risk for spectators, as well as for contestants, and those who chose to select positions as spectators which expose them to contact with the persons or instrumentalities engaged in a contest must not complain of injury

not due to negligence of the contestant. See Douglas v. Converse, 248 Pa. 232 (spectator at polo game) ; Toole v. Erlanger Fair Assn., 207 Ky. 441, 269 S. W. 523 (spectator of horse race) ; McLeod Store v. Vinson, etc., 213 Ky. 667, 281 S. W. 799 (guinea hen race on a public street) ; and Blakeley v. White Star Line, 154 Mich. 635, 118 N. W. 482 (baseball game—recovery allowed because of negligence of ball player, but the principle is stated that if plaintiff had been injured by a thrown or batted ball in the regular game, there could be no recovery).

The maxim is also applied in Jackson v. Connelly, 309 Pa. 12, where a horse dealer walked into a space where a horse kicked him after the ringmaster had touched the horse with a whip to start it. The court held that plaintiff's professional knowledge should have warned him of the danger. See also Barrage v. Philadelphia & Reading Ry. Co., 60 Pa. Superior Ct. 66.

We believe the foregoing reasoning disposes of the case against the Scranton Republican. As to the minor defendants, there is no evidence presented that they were in any way negligent in the operation of their vehicles, and the mere fact that as they approached the finish line they swerved from their course is not in itself an indication of any negligent operation on their part. We have not been shown any cases completely similar to this one on its facts, so far as any possible liability as to these youngsters is concerned, but the situation might be compared to the unmanageable horse cases, where the mere fact that a horse becomes unmanageable and runs into a crowd and injures some one therein does not in itself imply negligence on the part of the driver: Coller v. Knox, 222 Pa. 362; Luks v. American Ice Co., 267 Pa. 337.

We believe that the nonsuit was properly entered by the trial judge.

Now, June 22, 1938, the rule to show cause why a compulsory nonsuit entered as to defendants, the Scranton Republican, Robert Davenhall, and Daniel Day, should not be stricken off is hereby discharged.