# Commonwealth ex rel., Appellant, *v.* Beaver Valley Railroad Company.

*Railroads—Longitudinal use of highway—Acts of September* 28, 1791, 3 *Sm. L.* 56, *March* 6, 1793, 3 *Sm. L.* 90, *March* 29, 1802, 3 *Sm. L.* 495, *and April* 4, 1868, *P. L.* 62—*Boroughs.*

A railroad company incorporated under the Act of April 4, 1868, P. L. 62, has a right to lay its tracks longitudinally on the streets of a borough, although the act under which the borough was incorporated provided "that the streets, lanes and alleys of said town and out lots shall be common highways forever."

Argued June 2, 1908. Appeal, No. 6, May T., 1908, by plaintiff, from decree of C. P. Dauphin Co., Equity Docket No. 356, Commonwealth Docket, 1905, No. 305, dismissing bill in equity in case of Commonwealth ex rel. Attorney General *v.* Beaver Valley Railroad Company. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction.

CAPP, J., filed the following opinion:

This proceeding was instituted by the commonwealth of Pennsylvania ex rel. Hampton L. Carson, attorney general, against the Beaver Valley Railroad Company, to restrain the defendant company from operating and maintaining its railroad longitudinally on Fifth street in the borough of Beaver, to have the said railroad declared a public nuisance, to require the removal of said construction from Fifth street and restore the street to the condition it was prior to the entry thereon by the said defendant company and its occupation thereof.

From the admissions in the answer and the evidence taken on final hearing, we find the facts to be as follows:

### FINDINGS OF FACTS.

1. The town of Beaver was laid out in pursuance of two several Acts of assembly, approved, respectively September 28, 1791, 3 Smith's Laws, 56, and March 6, 1793, 3 Smith's Laws, 90, in which it is, inter alia, provided " that the Governor shall

reserve out of the lots of said town so much land as he shall deem necessary for public uses," and also "that the streets, lanes and alleys of the said town and out lots shall be common highways forever," and was incorporated into a borough by the Act of assembly approved March 29, 1802, 3 Smith's Laws, 495.

2. The defendant company was incorporated September 5, 1899, under the act of April 4, 1868, entitled, "An Act to authorize the formation and regulation of railroad corporations," and the several supplements thereto, for the purpose of constructing, maintaining and operating a railroad between two points in Beaver county, Pennsylvania, the eastern terminus being at or near the point where the Beaver and Mercer state road, commonly called the Sharon road, crosses the Pittsburg & Lake Erie Railroad in Beaver county, Pennsylvania, and the western terminus at or near a point on the Ohio river, about 500 feet south of the residence of John Moore, in Borough township, in said county and state.

3. The municipal authorities of the borough of Beaver, by ordinance duly approved September 15, 1899, granted the defendant company the right to enter upon Fifth street, in the borough of Beaver, Pennsylvania, and to construct, maintain and operate its railroad thereon longitudinally, which said ordinance was accepted by the defendant company on September 20, 1899.

4. The defendant company, subsequent to the enactment and acceptance of said ordinance, located and constructed its railroad through the borough of Beaver, along and upon Fifth street, one of the "common highways" of said borough (laid out and dedicated in pursuance of the provisions of the act of 1791, supra) longitudinally, in the center of said street and at grade therewith the whole length of said street, to wit, a distance of about 3,800 feet, which said street is intersected and crossed by several streets, viz.: Buffalo street, Market street, Elk street, Branchbank street, Beaver street and Mercer road, upon which several streets or roads, as well as upon Fifth street, there is comparatively little travel.

5. The construction of the said railroad on Fifth street was commenced in the latter part of October, 1903, and completed about June 1, 1904, since which time it has been in active

operation.  In the construction of its railroad the defendant company expended about the sum of $130,000.

6. Between the date of the commencement of the construction of the railroad and the date of its completion the borough of Beaver and several abutting property owners filed injunction bills to restrain its construction on Fifth street, which several proceedings were duly dismissed; and on September 25, 1905, the present bill was filed.

### DISCUSSION.

The question to be determined in this case is : Has the Beaver Valley Railroad Company, a corporation duly incorporated under the act of assembly approved April 4, 1868, the right to occupy Fifth street, in the borough of Beaver, longitudinally with its railroad as constructed and for some time past operated thereon?

It is not disputed that the railroad company is occupying Fifth street with the consent of the borough authorities and in accordance with the terms of the ordinance granting it permission so to do.

It cannot be questioned, under the numerous decisions of our appellate courts, that a highway is the property of the public, not of a particular district, but of the whole state, who may dispose of it by their representatives and at their pleasure, and in which no person, natural or corporate, has any exclusive interest unless it has been granted by the statute : Philadelphia v. Trenton R. R. Co., 6 Whart. 25.

The right of the supreme legislative authority to authorize the building of a railroad on a street or other public highway is not to be doubted : Com. v. Erie & North-East R. R. Co., 27 Pa. 339.

" The power of the legislature to authorize the building of a railroad upon a public road is indubitable. . . . To the commonwealth belongs the franchise of every highway within its limits as trustee of the public.  Every public road therein exists by force only of the commonwealth's authority : " Danville, etc., R. R. Co. v. Com., 73 Pa. 29.

The principle of law supported by the above authorities is not denied, but it is suggested that Fifth street is peculiar in its relation to the commonwealth, in view of the fact that it

was dedicated as a " common highway " under and in pursuance of the act of 1791, supra. We fail to see how this fact can in any wise interfere with the operation of the admitted general principle of law that the sovereignty of public roads remains in the commonwealth ; the fact that the commonwealth has dedicated the street in question to public use does not lessen its control over it or prevent it from exercising the same sovereignty it admittedly would have if the street had been dedicated by someone else ; we can see no force in this suggestion.

The rights of railroad companies incorporated and organized under the provisions of the act of April 4, 1868, to occupy public highways longitudinally, have been so well settled by our appellate courts that any attempt on our part to discuss this right would be an affectation of learning and research.

In the Appeal of the Philadelphia, Germantown and Norristown Railroad Company, 2 Walker, 291, a proceeding in equity brought to restrain a railroad company, formed by the consolidation of several companies incorporated and organized under the general railroad laws of this commonwealth, from laying its tracks upon Lafayette street, in the borough of Norristown, longitudinally, the president judge of the court below, on a motion to continue the injunction, dissolved it, referred the case to a master, who submitted a report thereon, in which he adopted the views expressed by the court in its refusal to grant the preliminary injunction, which report, upon exceptions, was duly confirmed, whereupon the complainant appealed to the Supreme Court, who affirmed the decree of the court of common pleas in the following per curiam opinion :

" The sole contention is as to the right of the appellee to construct its road on Lafayette street in the borough of Norristown. The appellants own lots fronting on the street. They have no greater right than any private person owning a lot fronting thereon has to prevent the construction of the railroad. No question as to the measure of damages, or giving security for the payment thereof, arises. They are out of the question. The municipal authorities have given their permission to lay the track on the street. It is in the line of the corporate franchise of the appellee. Under these facts the right to lay

it is too well sustained by the authorities to be successfully questioned."

Mr. Justice TRUNKEY, in Penna. R. R. Co.'s Appeal, 115 Pa. 514, says : " A company organized under the general statute may locate its railroad on a street or alley, because that statute expressly confers the power." The commonwealth suggests that this language of the learned justice is obiter dicta and was not well considered. To this suggestion we cannot accede; on the contrary, when it is noted that the opinion in Penna. R. R. Co.'s Appeal was filed little more than a year subsequent to the per curiam hereinbefore recited, it is very evident this statement was incorporated in the opinion by the learned justice with the disposition of the Philadelphia, Germantown and Norristown R. R. Co.'s Appeal, 2 Walker, 291, fresh in his recollection.

This construction of the act of April 4, 1868, was also adopted by the master in Phila. v. River Front R. R. Co., 173 Pa. 334, exceptions to whose report were overruled by the court of common pleas, and upon appeal the Supreme Court affirmed the judgment of the court below by a per curiam opinion, saying: " The questions involved in the assignments of error, so far as are material, have been so fully considered by the learned master that we deem it unnecessary to add anything to what he has said."

See also Penna. R. R. Co.'s Appeal, 116 Pa. 55 ; McAboy's Appeal, 107 Pa. 548.

The defendant also contended that even if the commonwealth had any standing to proceed in equity, nevertheless by remaining quiet until defendant had expended a large sum of money in the construction of its railroad, in pursuance of authority contained, or believed to be contained, in its charter, and the general laws pertaining thereto, and until said railroad was fully completed and had been for some time in operation, the commonwealth waived and by its laches lost its right to proceed in equity.

The defendant company commenced work on the construction of its railroad on Fifth street in October, 1903. It was temporarily stopped by injunction, subsequently dissolved, after which the work on the railroad was resumed and completed about June 1, 1904. This bill was filed September 25, 1905,

more than fifteen months after the completion of the road and the commencement of its operation. The defendant expended a large amount of money in the construction of its road, and there is no evidence that the presence of the track in the center of Fifth street, which is 100 feet wide, is a public menace, or that it is a nuisance. There is some force in this position of the defendant. See Commonwealth v. Turnpike Co., 153 Pa. 47; Commonwealth v. Pittston Ferry Bridge Co., 148 Pa. 621; Heilman v. Street Ry. Co., 175 Pa. 188; Heilman v. Street Ry. Co., 180 Pa. 627. But in view of the well-settled right of the defendant to construct and operate its railroad on Fifth street, as it has done, it is unnecessary for us to pass upon the question of laches raised by the defendant.

### CONCLUSIONS OF LAW.

Wherefore we conclude that the defendant had the lawful right to construct and operate its road longitudinally on Fifth street, in the borough of Beaver, and that the plaintiff's bill must be dismissed.

And now, July 16, 1906, this cause came to be heard on final hearing, was argued by counsel, and upon consideration thereof, it is ordered, adjudged and decreed that the plaintiff's bill be dismissed at its costs. The prothonotary is directed to enter this decree nisi and give notice thereof to the parties or their counsel, and unless exceptions be filed within the time limited by the equity rules enter the above decree as a final decree.

*Error assigned* was decree of the court dismissing the bill.

*W. A. McConnell,* with him *M. Hampton Todd,* attorney general, *John F. Cox, Jas. A. Stranahan* and *W. S. Moore,* for appellant.

*George B. Gordon,* with him *M. E. Olmsted* and *A. C. Stamm,* for appellee.

PER CURIAM, June 23, 1908:

The decree dismissing the bill is affirmed on the opinion of the learned judge of common pleas, at the cost of the appellant.