## Com. ex rel. Walker v. Centre County Commissioners.

*Road law—Duty of county to repair—Abandoned turnpike road—State highways—Acts of June 2, 1887, P. L. 306, April 20, 1905, P. L. 237, April 25, 1907, P. L. 104, May 10, 1909, P. L. 499, March 15, 1911, P. L. 21, and May 31, 1911, P. L. 468.*

1. Under the Act of May 31, 1911, P. L. 468, the duty of repairing and maintaining an abandoned turnpike road rests upon the county commissioners; and this is the case although, prior to the passage of the Act of 1911, the road for a time was temporarily maintained by the State Highway Department.

2. The maintenance of public highways is a matter of legislation as to whether or not a county, township or other subdivision of the State shall maintain the same.

3. In the absence of any proceedings to vacate an abandoned turnpike road, it will be presumed that it continues as a public highway.

4. The State has no authority to vacate an abandoned turnpike road after it has discontinued the use of such road as a part of the route of a State highway.

5. If the State has built a proper substitute for a turnpike road which it temporarily used as a part of a State highway, it is under no liability to repair it after its use as a State highway has been discontinued.

*Evidence—Judicial notice—Existence of roads.*

6. The court will take judicial notice of the existence of highways, bridges and abandoned turnpike roads.

Mandamus to take over road as a county road. C. P. Centre Co., Sept. T., 1925, No. 79.

*N. B. Spangler*, with him *Ivan Walker*, for plaintiff.

*S. D. Gettig*, County Solicitor, for defendant.

KELLER, P. J., Feb. 1, 1927.—This is a petition filed by Ivan Walker, Esq., then District Attorney of Centre County, praying for a writ of mandamus upon the Commissioners of Centre County, commanding them to repair and put in good order and condition, suitable and safe for public travel, a certain public highway situate in Taylor Township, this county, beginning at the

southern end thereof at the Blair County line, at or near lands now or lately owned by James Reese and E. B. Gulich, and extending northward through said Taylor Township to the line of Rush Township at lands now or lately owned by Ralph Smith; it being alleged in said petition that they were charged with the duty of repairing, rebuilding and maintaining said public highway or road, by reason of the fact that said road was originally part of a turnpike operated by The Spruce Creek and Phillipsburg Turnpike Road Company, incorporated under an Act of the General Assembly of Pennsylvania, approved March 24, 1849, P. L. 305, which said turnpike was entirely abandoned by said corporation sometime between 1870 and 1880. The county commissioners filed an answer to said petition for mandamus, in which they either admitted or did not deny the allegations of fact therein contained, but strenuously denied any legal liability for the upkeep and maintenance of the road in question, and contended that, under the Act of May 31, 1911, P. L. 468, said road became a part of the primary system of State highways of Pennsylvania, and as such was properly kept up and maintained by the State, and that, when later abandoned as a State highway, no legal duty or liability devolved upon them, or upon the County of Centre, to keep up and maintain said public road or highway. To the defendants' answer or return, the relator filed a demurrer, and the matter thus comes before the court for its determination and decision.

The real question here involved seems to be a novel one, no case bearing directly upon it being cited by counsel upon either side, and the determination thereof depends, to a great extent, upon the construction and application of the Act of May 31, 1911, P. L. 468, and its supplements, as the same was applicable to abandoned turnpikes at the time of its approval, unless there have been changes and modifications relative thereto due to subsequent legislation or altered conditions and circumstances; and said question is whether Centre County or Taylor Township or the Commonwealth of Pennsylvania is liable for the repair and maintenance of this road.

Under section 11 of the Act of June 2, 1887, P. L. 306, relating to the condemnation of turnpikes, the duty of repairing and maintaining the same when condemned was placed on the respective cities, *townships* or districts through which they had passed. Under the Act of April 20, 1905, P. L. 237, the duty of maintaining condemned turnpikes was placed upon the *counties*, instead of the *townships*, and by the Amending Act of April 25, 1907, P. L. 104, this duty was likewise extended to turnpikes "heretofore or hereafter abandoned, or any part thereof," or when the company owning the same had been or might thereafter be dissolved. A prior act, that of July 10, 1901, P. L. 650, had provided that any abandoned turnpike, or part thereof, running through unseated lands, which had thereupon become a township road should thereafter, in every such case, become a county road, and be kept in proper condition and repair by the county commissioners of the proper county. The Act of May 10, 1909, P. L. 499, repealed the Acts of 1905 and 1907, *supra*, and again placed the maintenance of condemned and abandoned turnpikes upon the townships; but this last act was in its turn repealed by the Act of March 15, 1911, P. L. 21, thus reviving the Acts of April 20, 1905, P. L. 237, *supra*, and April 25, 1907, P. L. 104, *supra*, and again placing the duty of repairing and maintaining condemned and abandoned turnpikes upon the respective *counties* through which they passed: Clarion County v. Clarion Township, 222 Pa. 350; Winters v. Koontz, 60 Pa. Superior Ct. 134; Manchester Twp. Supervisors v. Wayne County Commissioners, 257 Pa. 442.

Therefore, at the time of the passage of the Act of May 31, 1911, P. L. 468, commonly known as the "Sproul Act," the status of the road in question was

that of an abandoned turnpike, the duty of repairing and maintaining which, under the law, devolved upon Centre County; and, unless its status has been changed by said "Sproul Act" or some subsequent legislation, that duty still rests upon said county.

From the pleadings, it would seem that, from sometime after the passage of the "Sproul Act," *supra*, until the completion of the new State highway from Bald Eagle, in Blair County, to Sandy Ridge, in Centre County, as a part of Route No. 57 of the highway system of the State, several years ago, said road was temporarily maintained by the State Highway Department.

Route No. 57, in section 6 of the Act of May 31, 1911, P. L. 468 (Sproul Act), is described as follows: "From Huntingdon to Clearfield—Commencing in Huntingdon and running over Route No. 55 to Tyrone, *thence by way of Bald Eagle to a point on the dividing line between Blair and Centre Counties, thence by way of Sandy Ridge to a point on the dividing line between Centre and Clearfield Counties*, thence by way of Osceola to a point on the dividing line between Clearfield and Centre Counties, thence to Philipsburg, thence to a point on the dividing line between Centre and Clearfield Counties, and thence by way of West Decatur, Sington and Williams Grove into Clearfield, Clearfield County." This route was changed by the Act of July 22, 1913, P. L. 941, but only as to the last course, it now reading, "and thence by way of West Decatur, *Wallaceton* (instead of *Sington*) and Williams Grove into Clearfield, Clearfield County."

At the time of the passage of the Sproul Act, *supra*, the road in question, being an old abandoned turnpike, was the one generally used by the public in traveling from Bald Eagle to Sandy Ridge, and as it fulfilled that portion of the description called for by Route No. 57, the same was temporarily maintained by the State Highway Department, as above stated, and properly so under the law. When, however, several years ago, the State Highway Department built and constructed a new concrete road leading from Bald Eagle to Sandy Ridge, as part of said Route No. 57, the course of the same diverged very considerably from the course of the road in question, nor did the two roads come together until at or near Sandy Ridge, a distance of approximately twelve to fifteen miles from the point of their original divergence. This divergence was duly authorized by section 8 of the Act of May 31, 1911, P. L. 468, *supra*, which provided as follows: "Section 8. Whenever, in the construction, reconstruction, maintenance and repair of any of the State highways, it shall appear to the commissioner that any part or portion of a State highway, as now defined and described in this act, is dangerous or inconvenient to the traveling public, *in its present location*, either by reason of grades, dangerous turns or other local conditions, or that the expense to the Commonwealth in the construction, building, rebuilding, maintenance and repair thereof would be too great or unreasonable, and could be materially reduced or lessened by a divergence from the road or route, the *commissioner* is hereby *empowered* to *divert* the *course* or *direction of same;* and he may *diverge from* the *line* or *route* of *same* as herein described in such direction or directions as in his discretion may seem best, in order to correct said danger or inconvenience or lessen the cost to the Commonwealth. . . ." This section was amended by the Act of May 17, 1921, P. L. 837, which provided for the *vacation* of abandoned portions of State highway routes, as follows: "And where the portion of the line or route so abandoned shall be *entirely contiguous* to *the new line*, or *being* of a *length not exceeding one-half* of a *mile, shall have both termini in the new route*, whereby such new route supplies and takes the place of the abandoned portion, so that, in the opinion of the commissioner, the same shall be unnecessary for public use and travel or burden-

Com. ex rel. Walker v. Centre County Commissioners.

some or dangerous, the commissioner may, at any time, by written order, declare the portion of the road so abandoned to be vacated, and thereafter the same shall be closed to public use and travel and shall no longer be a public road. . . ."

It is very apparent that this Amending Act of 1921 cannot possibly apply to that portion of The Spruce Creek and Philipsburg Turnpike Road Company not used or abandoned by the State Highway Department in its construction of Route No. 57, being the road in question, inasmuch as the unused or abandoned old line or route is not entirely contiguous to the new line, the length thereof, instead of being one-half mile or less, is approximately twelve to fifteen miles, and the southern terminus of the old route does not end in the new route as the latter is laid out. While all these facts are not set out in detail in the realtor's petition for mandamus, or in the pleadings, they were argued by counsel, and there is no allegation in the defendants' answer that, when the State Highway Department discontinued the use of or abandoned the old route, the same was vacated under the Amending Act of 1921 above mentioned.

Judicial notice may be taken of the existence of public matters. And in counties where the court is conversant with its general affairs, judicial notice may be taken of the existence of highways, bridges and public buildings, also of the existence of abandoned turnpikes. Such notice, of course, would be predicated on a general knowledge of local history in relation to the highway, and the court is not bound to accept this medium unless it has the knowledge: Com. v. Ball, 277 Pa. 301.

In Pennsylvania, the title to all public roads is in the Commonwealth of Pennsylvania, as will appear by the following cases: "In England a highway is the property of the king as *parens patriæ* or universal trustee; in Pennsylvania it is the property of the people, not of a particular district, but of the whole State, who, constituting as they do the legitimate sovereign, may dispose of it by their representatives and at their pleasure. Highways, therefore, being universally the property of the State, are subject to its absolute direction and control:" In re Philadelphia and Trenton R. R. Co., 6 Wharton, 25, 43, 44; Com. v. R. R. Co., 222 Pa. 220, 222; Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318, 323; Shoe v. Nether Providence Township, 3 Pa. Superior Ct. 137, 139.

The maintenance of public highways is a matter of legislation as to whether or not a county, township or other sub-division of the State shall maintain the same, or whether or not such maintenance devolves upon the State itself. In the absence of any proceedings vacating this condemned turnpike, it is still a public highway, and we think the pleadings in the case are broad enough to admit that this is a fact. The only question then is, what particular municipality is liable for the maintenance and repair of the same?

The title of the Amending Act of April 25, 1907, P. L. 104, *supra*, distinctly created a new class of highways that must be repaired and maintained by *counties*, cities and boroughs. It notified these municipal sub-divisions that, in addition to the repair and maintenance of turnpikes appropriated and condemned, *turnpikes abandoned* must also be cared for. The title could scarcely be more explicit: Winters v. Koontz, 60 Pa. Superior Ct. 134, 136, 137.

The State had no authority, under any legislation we have been able to find or that has been brought to our attention, to vacate this abandoned turnpike when it discontinued the use thereof as part of Route No. 57 after the new line or route was constructed. It is also clear from the amendments to section 8 of said Act of May 31, 1911, P. L. 21, that the mere abandonment or

discontinuing the use of this turnpike by the Commonwealth did not automatically vacate it as a public highway.

In our opinion, there is no legal liability upon the State to repair and maintain this road, as it has already fulfilled the full duty imposed upon it by the Act of May 31, 1911, relative to Route No. 57, by the building and construction of the new concrete line or route, as a part thereof, from, at or near Bald Eagle to Sandy Ridge, and by its repair and maintenance of the same, which new route diverged considerably from the old line or route, being the abandoned turnpike or road in question; nor is there any legal liability upon Taylor Township to repair and maintain the road in question, as it had been relieved from any previous statutory liability relative thereto by the Act of April 25, 1907, long prior to the commencement of this action. Neither the State nor the township being liable for the repair and maintenance of the turnpike or road in question, therefore, and the same being still a public highway at the inception of these proceedings, which, at the time of the passage of the Act of May 31, 1911, P. L. 21, it was the duty of the County of Centre to repair and maintain, under the Acts of April 20, 1905, and April 25, 1907, as reinstated by the Act of March 15, 1911, and no legislation or appellate court decisions having been brought to our attention which had changed its status then, we are constrained to hold that said duty still rests upon Centre County, under the law. Of course, the extent to which this shall be done is largely a matter of discretion with the commissioners so long as the road in question is properly repaired, maintained and preserved.

And now, to wit, Feb. 1, 1927, a peremptory writ of mandamus is awarded against the Commissioners of Centre County, defendants, in accordance with the foregoing opinion. To which opinion and decree an exception is noted for the defendants and a bill sealed.