## DiBlasi, etc., et al. v. Pennsylvania Railroad Co. et al.

*Maurice Freedman*, for plaintiffs.

*I. G. Gordon Forster* and *Theodore Voorhees*, for defendants.

GORDON, JR., P. J., April 28, 1948.—This is an action in trespass to recover damages for injuries sustained by minor plaintiff when he fell in the dummy between the railroad tracks, which lie in the bed of Washington Avenue between Fourth and Fifth Streets in the City of Philadelphia. The jury was directed to return a verdict in favor of defendants on the claim of the minor's parents, the evidence having failed to establish any loss incurred by them. Consideration of the legal duties of respective defendants was reserved for the court en banc, and the jury was instructed to resolve the factual questions involved in determining liability. A verdict in favor of minor plaintiff against both defendants in the sum of $5,000 having been returned by the jury, these motions for judgment non obstante veredicto and for a new trial were filed on behalf of both defendants.

"On the motion for judgment n. o. v., the testimony should not only be read in the light most advantageous to plaintiffs, all conflicts therein being resolved in their favor, but they must be given the benefit of every inference of fact pertaining to the issues involved

which may reasonably be deduced from the evidence, including evidence produced upon both sides, and judgment n. o. v. should only be entered in clear cases": Bockstoce et ux. v. Pittsburgh Railways Co., 159 Pa. Superior Ct. 237, 242.

Viewed in the light of this fundamental principle, the facts may be briefly stated as follows: On May 5, 1942, minor plaintiff was seven and one-half years of age. With two companions he left a playground which is situated on the south side of Washington Avenue, between Fourth and Fifth Streets. The north side of Washington Avenue between Fourth and Fifth Streets is improved by residential properties. Minor plaintiff followed his two companions as they crossed Washington Avenue in about the middle of the block from the south to the north side of the street. As he crossed the railroad tracks he tripped over an exposed pipe which lay between and perpendicular to the two inner rails, and as a result of his fall, sustained an injury which necessitated surgery for the removal of his spleen. The evidence clearly established that the earth beneath this pipe had been washed away to a depth of approximately one foot, and that that condition had existed for approximately 12 years.

It would serve no useful purpose to set forth in detail the facts which support the seriousness of the injury and justify the amount of the verdict, which was in our judgment, not so large as to shock the conscience of a court. The loss of such an organ of the body as the spleen, coupled with all the pain and suffering incident to its damage and removal, was no trivial injury; and while another jury might render a smaller verdict, we cannot say that the one here rendered was out of reason. Neither is it necessary to elaborate upon the facts which establish constructive notice of the existing condition, and the lack of reasonably careful maintenance of the terrain at the scene of

the accident: Nor any alleged contributory negligence on the part of this infant, all of these questions having been determined by the verdict of the jury.

The issue, therefore, is a narrow one which resolves itself into a determination of whether either or both of these defendants owed a duty to plaintiff, as a member of the public, and as a pedestrian crossing Washington Avenue, to keep the ground at the scene of the accident in reasonably safe condition. Washington Avenue between Fourth and Fifth Streets is a public highway, and appears on the city plan as a plotted and open street upwards of 120 feet in width. It was admitted of record that the general obligations of defendant city are the obligations of a municipality in connection with the maintenance of public streets.

When originally opened in 1790, Washington Avenue was known as Prime Street, it then being situated in the District of Southwark. By the Act of April 2, 1831, P. L. 353, entitled "An Act Authorizing The Governor to Incorporate the Philadelphia, Delaware County and Southwark Railroad Companies", the predecessor of defendant Pennsylvania Railroad Company was authorized to locate a railroad from Philadelphia along the Baltimore Post Road through the Towns of Darby and Chester to the Delaware State line. Section 14 of that act provided:

". . . that it shall be the duty of the said company, to construct and keep in good repair good and sufficient passages across the said railroad where any public roads shall intersect and cross the same so that the passage of carriages, horses, persons and cattle along the said roads shall not be obstructed; and also when the said railroad shall intersect any farm, to provide and keep in repair a suitable passage for the use of said farm."

The City of Philadelphia contends that the legislature, as the sovereign power, thereby granted to the

commissioners of the railroad the right to locate tracks upon the streets of the City of Philadelphia, and that by locating the railroad right-of-way on the bed of a city street, there was an actual taking by the railroad of so much of the street as was necessary for its right-of-way, which area thereby ceased to be a part of the public highway and became the exclusive property of the railroad.

We cannot agree with the inference thus drawn nor the conclusions flowing from that premise. The city argues that since this strip ceased to be part of a public street, the railroad acquired exclusive control of the land occupied by its tracks, thus depriving the city of the right to enter upon that area, and relieving it of the correlative duty of maintenance.

It must be conceded that the legislature can authorize the building of a railroad on a public highway: Commonwealth ex rel. v. Beaver Valley Railroad Co., 222 Pa. 220. It does not follow, however, as the city contends, that the legislative grant necessarily appropriated the center of Washington Avenue to the exclusion of the public, thereby entirely destroying the already existing rights of the public in that part of it covered by the grant. Washington Avenue did not thereby become, as the city argues, two streets running parallel with the railroad tracks, with no north and south crossings except where intersected by another public street. In the absence of express words giving such an exclusive right to the railroad, the grant must be construed most strongly against the grantee and most favorably in aid of the previously existing public right out of which the right of way was carved.

"A grant to a corporation of a privilege upon a highway, such as to enter, cross or pass along it is, in the absence of a clearly expressed intention to the contrary, a grant subject to the existing public right of

use, and is to be exercised in such manner as shall interfere as little as possible with those for whose benefit the way was originally laid out and opened": Jones v. Railroad Co., 169 Pa. 333.

Defendant city is under a duty to exercise reasonable care in the maintenance of public highways and the evidence is clear in this case that the city had sufficient constructive notice of the existence of a dangerous condition. The city was not relieved of its general responsibility for the condition of the highway by legislative act, and in the absence of such exculpation, either in law or in fact, its liability to the public is fixed. It is well established that the public has a right to cross a highway without being restricted to intersections and that right is not impaired by the presence of railroad tracks in the bed of the street: Moore et ux. v. Pennsylvania Railroad Co., 99 Pa. 301.

The decision in Reed et al. v. Allegheny County, 330 Pa. 300, so strongly relied upon by the city, supports rather than destroys this conclusion. The issue raised on that appeal was the liability between defendant county and the railroad, it being conceded that "there is no controversy regarding the verdict in favor of the minor plaintiff". In the instant case neither of defendants has seen fit to raise the question of their liability inter se, although it would appear from the principles enunciated in Reed v. Allegheny County, supra, that the railroad having acquired an "easement" across a public way previously existing, acquired also the duty of maintenance as between it and the municipal authorities.

Defendant railroad contends that the legislative grant constituted a complete appropriation of the center of this public street to the exclusion of the public, and that minor plaintiff, therefore, on crossing this street and the tracks in its bed, was a trespasser. We cannot accept that conclusion. The pertinent sec-

tion of the statute already referred to imposed a duty on the railroad "to construct and keep in good repair good and sufficient passages". A determination of the extent of that duty is dependent upon particular circumstances; it is not a duty that remained static and fixed under the conditions existing in 1831. The duty to keep in repair involves something more than the mere preservation of the condition in which the street was when first occupied by the railroad. It embraced a liability which was fluid and dynamic, and imposed varying obligations "as from time to time may become necessary for the convenience of the public in the use of the streets": Reading v. United Traction Co., 202 Pa. 571.

It is true that the statute speaks of passages where public roads intersect and cross the railroad tracks. The purpose of that provision, however, was clearly defined, namely, that the passage of horses, carriages, persons and cattle would not be obstructed. Moreover, an affirmative duty was required when the railroad passed through a farm, in which case it was required to provide a suitable passage for the use of the farm. It seems to us clear that the legislature intended the grant to be subject to existing public uses, and was to be exercised in such manner as would "interfere as little as possible with those for whose benefit the way was originally laid out and opened": Jones v. Railroad Co., supra.

We are of the opinion that the statutory obligations of the railroad, when read in the light of the circumstances existing then, as well as now, imposed a duty on defendant railroad to maintain its right of way in a manner reasonably appropriate with the area through which it passed.

Today its tracks are in the bed of a public street in the center of a great metropolis. At the scene of the accident the north side of the street is improved with

residences, and the south side is partially devoted to the use of the children of the neighborhood as a playground. The public is not required to cross public highways only between intersections, and, since that is its right, the duty rests upon the railroad to maintain the bed of its tracks, wherever the public has a right to cross there, in a reasonably safe condition for such use. In the present circumstances the whole area of its tracks is subject to the public's right of use. . . .

Assuming, arguendo, that the statutory duty of defendant railroad did not cover the present situation, we are of the opinion that a common-law duty was owing to this minor plaintiff, and that the railroad was bound to keep the street occupied by its tracks in good condition for pedestrian use, even in the absence of any express contract or statutory duty to that effect: Reed v. Allegheny County, supra, 304.

In Moore et ux. v. The Pennsylvania Railroad, supra, defendant railroad maintained tracks along Trenton Street, a public highway in the Frankford district. Although the parents of minor plaintiff were not permitted to recover damages for fatal injuries he sustained when struck by a passing train, the nonsuit was entered in that case because the boy was walking along the railroad tracks and not across them. At page 304, however, the court said: "It is true that the railroad track at this place was laid upon the bed of a public street, and hence the right to cross it was not limited to the highway or street crossings". See also Oakland Railway Co. v. Fielding, 48 Pa. 320, and Gates v. Pennsylvania Railroad, 150 Pa. 50.

The authorities upon which defendant railroad relies are clearly distinguishable. In Buxton v. B. & O. Railroad, 81 Pa. Superior Ct. 490, the accident occurred in a private freight yard, not a public road. In Taylor v. Phila. Rapid Transit Co., 245 Pa. 189, plaintiff drove his automobile over a raised set of

rails, which indicated clearly that motor vehicles were not permitted to cross at the point of the accident. In Calla v. Hershey Transit Co., 83 Pa. Superior Ct. 135, again the accident did not occur on a public highway.

It is clear that the railroad right-of-way, although sometimes called an easement, is a right superior thereto: Penna. Schuylkill Valley Railroad v. Reading Paper Mills, 149 Pa. 18. The portion of the charge which is assigned as error in support of the railroad's motion for a new trial, clearly indicates that the trial judge was merely giving a practical example, understandable by laymen, of the nature of this right, which included the right "to fence in, to build over the whole surface, to raise and maintain any appropriate superstructure". It is clear that the railroad did not see fit in any way to indicate to the public that its use of this public highway necessitated a complete exclusion of pedestrians as well as motor vehicles. Insofar as the tracks were raised above the bed of the street, the question of the operation of motor vehicles across defendant's tracks in such circumstances does not arise here. As far as the use of the bed of the tracks by pedestrians is concerned, however, the railroad did nothing to give notice to pedestrians that their ancient right to cross the public street, which existed prior to the creation of the right of defendant railroad, had been, or was intended to be denied them. Indeed, its use by pedestrians has always been open, continuous and notorious, and sanctioned by the knowledge and tacit consent of the railroad.

We, therefore, conclude that both the city and defendant railroad owed to this minor plaintiff, as a pedestrian, the duty to maintain the scene of the accident in a reasonably safe condition, and that, whatever their rights and duties inter se may be respecting the actual repair and maintenance of the right of way, defendants' relationship to each other in that respect

in no way absolved them from the duty they owed to the public. No question having been raised, either at the trial or upon argument, upon their respective rights and duties inter se, we refrain from passing upon that question, which can better be decided in another action or in connection with execution on this judgment.

The motions of defendants, the City of Philadelphia and the Pennsylvania Railroad Company, for judgment non obstante veredicto are dismissed, and the rules for a new trial are discharged.