# Gallagher *v.* Baltimore & Ohio Railroad Company, Appellant.

*Negligence—Railroads—Destruction of wagon.*

1. In an action against a railroad company to recover damages for the destruction of a wagon, it appeared that the defendant owned a pier property on which were two railroad tracks. At the time of the accident a ship was moored alongside the pier. The plaintiff's driver backed his team and wagon across the tracks in order to load from the ship on to the wagon two casks of brandy. While the wagon was standing in this position and at a time when the driver was off the wagon and "somewhere about the team," a string of cars backed on to the pier on the track farthest from the ship. The driver notified of the approaching cars, got on his wagon and almost succeeded in getting it off the track when it was struck by the cars. The evidence did not show that

there was any traveled way on the pier which was opened to the public, or that the pier was ever used by the public for the purpose of receiving goods from ships, or that the plaintiff's wagon was there by the permission of or the knowledge of the defendant, or that there had been any such previous use of the pier by the plaintiff. The evidence tended to show that the train was backed without a lookout, but there was no evidence of recklessness or wantonness of the train hands. There was no evidence as to the speed of the train, nor as to whether a warning signal was given. *Held,* (1) that the court could not say as a question of law that plaintiff's driver was negligent, and (2) that the evidence of defendant's negligence was insufficient to support a verdict for the plaintiff.

2. A railroad company has the right to the exclusive possession of tracks, except at crossings; and a person who enters upon the tracks at any other point than at such crossings is guilty of negligence per se.

Argued Oct. 11, 1912. Appeal, No. 17, Oct. T., 1912, by defendant, from judgment of C. P., No. 3, Phila. Co., June T., 1904, No. 3,243, on verdict for plaintiff in case of James Gallagher v. Baltimore & Ohio Railroad Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY and PORTER, JJ. Reversed.

Trespass to recover damages for a wagon. Before McMICHAEL, P. J.

At the trial it appeared that on August 29, 1903, the plaintiff's wagon was run down by cars operated on tracks constructed on a pier owned by the defendant, in the Delaware river. The circumstances of the accident are fully stated in the opinion of the Superior Court.

The trial judge charged in part as follows:

[It appears by admissions of counsel for the defendant that the wharf property in question was owned and controlled by the B. & O. Railroad Company. It appears, also, by the admissions of the counsel for the defendant, that the train of cars was operated by employees of the defendant company. That, in my opinion, puts the defendant company in a different position from that in which it would be if it were simply operating cars on its own right

of way and railroad track. Then anybody on the track would be a mere trespasser, unless he was going across the railroad at an authorized crossing or at some other authorized place. But in this case there was a wharf, and by the evidence we find that an Italian vessel was moored to the wharf. The recollection of the testimony is for you, and I simply want to bring the circumstances of the case before you.] [5] In doing so I will say that it appears from the testimony of the United States inspector of customs, who was on the vessel, that the wagon of the plaintiff was backed up to the vessel in order that it might be loaded, by means of a derrick or sling or crane or something of that kind, with a couple of casks of brandy.

[Therefore, the defendant company owed a care, and the plaintiff's wagon was there at least by permission of the railroad company. Although we have no positive evidence of that, I think it may be assumed from the permission that the railroad company was the owner of the wharf and was entitled to use it for the purpose of unloading vessels, and the wagon was there unloading a couple of casks of brandy from the vessel.] Under the circumstances of this case, was or was not the defendant company guilty of negligence? You have heard the testimony and you have a right to determine that question by taking into consideration the admitted fact that this was a wharf property owned and controlled by the defendant company, whose cars were on it. It is for you to say whether or not the defendant company operated its cars in a careful or careless manner.

If you find from the evidence that the defendant company operated its cars in a careless manner, then you may find for the plaintiff, although you are not bound to and should not unless you find that the driver was in a place where he was operating the team with care. Those are the questions for you to determine under the evidence.

Verdict and judgment for plaintiff for $300. Defendant appealed.

*Errors assigned* among others were (1) refusal of binding instructions for defendant; (4, 5) above instructions, quoting them.

*W. B. Linn*, of *Read, Gill & Linn*, with him *G. H. Stein*, for appellant.—Defendant was not negligent: Boggess v. R. R. Co., 234 Pa. 379.

Plaintiff's driver was contributorily negligent: Mulherrin v. R. R. Co., 81 Pa. 366; Railroad Co. v. Norton, 24 Pa. 465; Claus v. Transit Co., 17 Pa. Dist. Rep. 212; Mason v. Philadelphia, 205 Pa. 177; Schlemmer v. R. R. Co., 222 Pa. 470.

*Frank A. Chalmers*, with him *Simpson, Brown & Williams*, for appellee.—Defendant was negligent: Fisher v. Ry. Co., 131 Pa. 292; Cookson v. Ry. Co., 179 Pa. 184; Bourrett v. Ry. Co., 132 N. W. Repr. 973; Buckry-Ellis v. Ry. Co., 138 S. W. Repr. 912; Craig v. Ry. Co., 71 S. E. Repr. 983; Norfolk & W. Ry. v. Holmes, 64 S. E. Repr. 46; Louisville & N. R. R. Co. v. Veach, 112 S. W. Repr. 869; Bowles v. Ry. Co., 57 S. E. Repr. 131; Florida Cent. & Peninsula R. R. Co. v. Foxworth, 41 Fla. 1 (25 So. Repr. 338); Smith v. R. R. Co., 98 N. W. Repr. 1022; Pinney v. Ry. Co., 71 Mo. App. 577.

No contributory negligence on the part of plaintiff's driver appears.

OPINION BY RICE, P. J., February 27, 1913:

It appears by the testimony of Mr. Atmore, United States inspector of customs, that he was notified (by whom is not stated) that two casks of brandy were to be landed from the Italian bark Rosario, which was moored alongside Pier 62, South Wharves, Philadelphia. By his direction the plaintiff, a bonded teamster for the government, sent a team and wagon, in charge of his employee, to receive and haul away the casks. Two railroad tracks of the defendant ran along that side of the pier to which the ship was moored, and, while it does not appear that there was a traveled way on the pier

leading across the tracks, it does appear, by the testimony of Mr. Atmore, that there was no way by which these casks could have been removed by wagon, unless the wagon went on these tracks. According to his testimony, which was uncontradicted, the wagon was backed up against the ship, prepared to take on the casks of brandy, and stood across the tracks, the driver being "somewhere about the team." While the wagon was standing in this position the witness saw a string of cars, about 200 feet away from the wharf, backing towards the pier, on the track farthest from the ship. Thereupon he notified the driver, who, he says, went to his wagon and almost succeeded in getting it off the track when it was struck by the cars.

It is contended that binding direction should have been given for the defendant upon the ground of the driver's negligence. But it is to be observed that the defendant offered no evidence, and that it did not affirmatively appear, at least not conclusively, in the presentation of the plaintiff's case, that, when the driver backed the wagon across the tracks, the cars were in motion. And, if it be true, as the evidence would have warranted the jury in finding, that that was the only way to remove the casks from the ship by wagon, then, unless the cars were in motion, it could not be declared, as matter of law, that placing the wagon in that position was a negligent act which would bar recovery notwithstanding the defendant's negligence. Nor did the fact that the driver was off the wagon after it had been placed in the required position, conclusively establish negligence on his part. A finding by the jury that being about the horses, instead of on the wagon, was the exercise of due care in the circumstances, would not be absurd. The question of contributory negligence cannot be treated as one of law unless the facts and the inferences to be drawn from them are free from doubt. If there is doubt of either, the case is for the jury: Kuntz v. N. Y., etc., R. R. Co., 206 Pa. 162; Coolbroth v. Penna. R. R. Co., 209 Pa.

433; Keile v. Kahn, 30 Pa. Superior Ct. 416. Another principle to be noticed is, that contributory negligence is matter of defense, and the onus probandi is on the defendant, unless the plaintiff's own evidence sufficiently discloses the fact. If, however, the plaintiff makes out a prima facie case without disclosing contributory negligence, he is not bound to go further and prove negatively that he himself was not guilty of negligence that contributed to the result: Clark v. Lancaster, 229 Pa. 161. Applying to the evidence these well-settled rules as to the province of the court and jury and as to the burden of proof, the court was right in refusing to charge, as matter of law, that, even though the defendant was guilty of actionable negligence, yet the contributory negligence of the driver so indisputably appeared in the presentation of the plaintiff's case as to bar recovery.

Was the defendant negligent, or, to be more accurate, was the evidence sufficient to warrant the submission of that question to the jury and a determination of it by them in the affirmative? It is not alleged in the plaintiff's statement of claim, and there is no evidence that would sustain a finding, that the defendant's employees, knowing that the plaintiff's wagon was on the track, recklessly or wantonly backed the train upon it. What is alleged is that the train was negligently operated, in that it was backed down the track without a lookout being kept for objects or persons that might be on the track. The only testimony on this subject is that of Mr. Atmore, which was to the effect that he did not see any attendant on the rear freight car or anywhere on the train, and that, by reason of the other end of the train being obscured or the train being too long, he could not see whether there was an engine. As to whether a warning signal of the approach of the train was given the evidence is silent. Nor is there any evidence as to the speed of the train. There remains to be considered the fact that the train was backed without any person at the rear end to keep a lookout and to give warning of its approach.

Under some circumstances, as, for example, at road crossings, this would be a negligent mode, as the cases cited in the plaintiff's brief abundantly show. See, particularly, Fisher v. Monongahela, etc., Ry. Co., 131 Pa. 292, and Cookson v. Pitts., etc., Ry. Co., 179 Pa. 184. It is contended that the case in hand is within the same principle. The idea was thus expressed by the learned trial judge in his charge after describing the position of the wagon and the purpose for which it was backed up against the ship: "Therefore, the defendant company owed a care, and the plaintiff's wagon was there at least by permission of the railroad company. Although we have no positive evidence of that, I think it may be assumed from the admission that the railroad company was the owner of the wharf and was entitled to use it for the purpose of unloading vessels, and the wagon was there unloading a couple of casks of brandy from the vessel." It is to be noticed, however, that there is no evidence that this was a public wharf. On the contrary, it was distinctly admitted "that the Baltimore and Ohio Railroad Company owns and operates the pier property in question for railroad purposes," and the proof goes no further. There is no evidence that there was any traveled way on the pier which was open to the public, or that the plaintiff's wagon was on the pier on any business connected with the railroad company, or that it was ever used by the public for the purpose of receiving goods from ships moored alongside it, or for any other purpose, or that the plaintiff's wagon was there by express permission or even with the knowledge of the defendant, or that there was any such previous use of the pier by him for the same purpose as would warrant an inference that he was there on this occasion by permission. Being a pier, it may be assumed that the ship was moored there lawfully, that is, with the consent of the defendant, its owner; and it perhaps may be inferred that the unloading of goods from it at that point was one of the purposes for which it was moored there. But the utmost extent

to which the inference could go, in the, absence of other evidence, is that it was there lawfully for the purpose of delivering goods to the defendant or on its cars. The irresistible conclusion from the evidence is, that the plaintiff's right to have his wagon on the tracks of the defendant was not affirmatively proved, and was not to be presumed from the facts that were proved. There was no negligence unless there was a breach of duty. The burden of proving negligence rested on the plaintiff; it was not to be inferred from the defendant's failure to produce evidence on the subject. The case does not belong to the exceptional class to which the doctrine res ipsa loquitur applies. For aught that the evidence discloses the defendant had a right, as against the plaintiff, to a clear track, and was not bound to foresee that he or any other person might have his wagon on it for the purpose of receiving goods from the ship. This being so, the fact that it backed its train on its own property without maintaining a lookout, was not negligence of which the plaintiff could complain. "If the use of a railroad is exclusively for its owners, or those acting under them; if others have no right to be upon it; if they are wrongdoers whenever they intrude, the parties lawfully using it are under no obligations to take precautions against possible injuries to intruders upon it. . . . Precaution is a duty only so far as there is reason for apprehension. No one can complain of want of care in another where care is only rendered necessary by his own wrongful act." This statement of the law by Justice STRONG, in Phil. & R. R. R. Co. v. Hummell, 44 Pa. 375, was quoted with approval in Bailey v. Lehigh Valley R. R. Co., 220 Pa. 516, and the court, by Justice MESTREZAT, further said: "It is settled law in this state that a railroad company has the right to the exclusive possession of its tracks except at crossings; and that a person who enters upon the tracks at any other point than at such crossings is guilty of negligence per se. Where the public have the right to cross a railroad, the company in the operation of its trains must ex-

ercise ordinary care to prevent accidents. This necessarily follows from the right of the public to cross the tracks. But at all other points upon a railroad, where the railroad company has the exclusive right to the use of its tracks, the person who enters upon the tracks becomes a trespasser, and the only duty imposed upon the company at that place is to refrain from wantonly injuring the trespasser. In operating trains on its road at all places other than at crossings, the company's employees in charge of the train have the right to assume that no person will enter upon the tracks, or if upon the tracks will immediately leave them upon the approach of the train. The train men may act upon this presumption, and if a person trespassing on the tracks is killed, the company is not liable unless his death is caused by the wanton or willful conduct of those in charge of the train." The same doctrine was recognized and applied by this court in Leithold v. Phila. & Reading Ry. Co., 47 Pa. Superior Ct. 137, and it has the support of many well-considered decisions. The doctrine of those cases in which it is held that, when a railroad company has for years, without objection, permitted the public to cross its tracks at a certain point, not in itself a public crossing, it owes the duty of reasonable care towards those using the crossing, is not applicable under the facts of this case, as we have already pointed out. And, as was said by our Brother Porter in the case last cited, when a permissive crossing really exists there ought to be no difficulty in producing evidence as to its exact location, else how can the railroad company or its employees be presumed to know when and where they ought to give warning of the approach of a train to such crossing? Viewing the case in the light of these well-settled principles, we are constrained to the conclusion that the defendant's request for binding direction upon the ground that actionable negligence had not been shown, should have been granted.

The judgment is reversed and is now entered for the defendant.