# Taylor *v.* Philadelphia Rapid Transit Company, Appellant.

*Negligence—Street railways—Trespasser on tracks—Automobile.*

Where a street railway company operates a double line of tracks built in the manner of steam railroad tracks along its own private right of way in the center of a public highway above the level of the highway, and its ballasted roadbed is protected by a stone curb several inches high, such company cannot be held liable for damages to an automobile, where it appears that the automobile was driven at a point where there was no public crossing over the curb and on to the tracks and stalled and there hit by an electric car operated without wantonness or malice by the motorman.

Argued Oct. 17, 1913. Appeal, No. 148, Oct. T., 1913, by defendant, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1908, No. 856, on verdict for plaintiff in case of Deacon R. Taylor v. Philadelphia Rapid Transit Company. Before Rice, P. J., Henderson, Morrison, Orlady, Head and Porter, JJ. Reversed.

Trespass to recover damages for injuries to an automobile. Before Brégy, P. J.

The facts are stated in the opinion of the Superior Court.

608   TAYLOR *v.* PHILA. RAP. TR. CO., Appellant.

Statement of Facts—Opinion of the Court.   [55 Pa. Superior Ct.

Verdict for plaintiff for $912.54. The court dismissed defendant's motion for judgment n. o. v. and entered judgment for plaintiff on the verdict.

*Error assigned* was in dismissing motion for judgment for defendant n. o. v.

*Sydney Young*, for appellant.—The plaintiff was guilty of contributory negligence: March v. Traction Co., 209 Pa. 46; Houston v. Consolidated Traction Co., 28 Pa. Superior Ct. 374; Griffith v. West Chester St. Ry. Co., 214 Pa. 293; New York Cent. & Hudson River R. R. Co. v. Maidment, 168 Fed. Repr. 21.

*J. S. Freeman*, for appellee, cited: Keller v. Traction Co., 45 Pa. Superior Ct. 462; Ely v. Ry. Co., 158 Pa. 233.

OPINION BY ORLADY, J., February 20, 1914:

The plaintiff was driving his automobile on First avenue, a public highway in the suburbs of Philadelphia. This avenue connects with Tyson avenue at right angles and there ends. On the east side of Tyson avenue there is located, and in public use an open roadway with a width of sixteen feet. In the center of Tyson avenue, the defendant owns a private right of way on which it operates a double line of trolley tracks. This construction is similar to that of steam railroads; heavy rails are fastened to wooden ties which are imbedded in stone ballast, and the whole right of way is inclosed by a heavy curb, for protecting the ballasted track, and is from four to twelve inches higher than the roadway on its eastern side.

The plaintiff approached Tyson avenue with the intention of turning north, but when he arrived at the intersection of the avenues, as he states: "when we got within one block of where we turned, we discovered that the tracks were a little elevated, and rather than risk an upset, I turned across the track and there I stalled

the engine." When asked, "Why, if this was a bright moonlight night, as you say, you were driving west on First avenue, and desired to turn north on Tyson avenue—why did you run your car on the road track when there was plenty of room to the right?"—he answered—"For fear in making the turn when I discovered it—for fear of turning the machine over. If running at a moderate speed—which I was—I could turn my car in twelve feet." The speed at which he entered upon Tyson avenue is fairly shown by the fact that the loaded five-passenger car mounted the curb and stopped when the front wheels had crossed both rails of the north-bound track. He was traveling on an unfamiliar road in uncertain moonlight, on a down grade, and about to make a right-angled turn. He had before him an abrupt barrier of from four to twelve inches in height, and between it and him there was the sixteen-foot road-way. His surroundings required that special care should be exercised. After the car stalled, the passengers got out and one went back along the track of the defendant company to signal an approaching car, but failed to attract the attention of the motorman, and it crashed into the automobile and wrecked it. This action was brought to recover for the damages, and the trial resulted in a verdict for the plaintiff. A motion for a nonsuit was overruled, binding instructions for the defendant were refused, and the court declined on motion to enter a judgment for the defendant non obstante veredicto.

The trial judge aptly described the situation in his charge—"Was it the carelessness of Mr. Taylor or the carelessness of the motorman, or the carelessness of both? If it was the carelessness of both, the verdict must be for the defendants, because a man who is partly careless cannot get a verdict. If it was the carelessness of Mr. Taylor, of course he cannot get a verdict. If it was the carelessness of the transit company alone, by the motorman, then the plaintiff is entitled to a verdict. The common sense of this case is the law of it."

It must be conceded that the plaintiff had no right to cross these inclosed trolley tracks, which were for the exclusive use of the defendant company, and that he was a trespasser through his own lack of care in approaching Tyson avenue at such speed that he could not make the turn into the sixteen-foot roadway at the side of the tracks.

He took no proper precautions as he approached Tyson avenue, until, according to his own testimony, it was too late for him to make the turn and he did not even then stop his car, but took his chances in going over a double-track trolley line to get to the roadway on the other side, at a place where there was no crossing: Houston v. Traction Co., 28 Pa. Superior Ct. 374.

Had it been a grade crossing it would have been his duty to approach it at such speed that the car would be under control as to stop it short of the track if the occasion demanded: Griffith v. Street Ry. Co., 214 Pa. 293.

In March v. Traction Co., 209 Pa. 46, it was held "What is having horses (or an automobile) under control is a matter that varies with the circumstances. To come to a right-angled street crossing in the dark at a trot is in itself strong evidence of negligence. The plaintiff was bound to know, that it was a point of danger, and not only to keep such a lookout as would inform him of the approaching car, but also such control of his team as would enable him to stop on short notice of a threatened collision."

As we said in Van Winckler v. Morris, 46 Pa. Superior Ct. 142, "An inanimate body of the weight of a heavy automobile, will not take a flying jump over a curb on to a pavement unless propelled by exceptional force," and from the plaintiff's own showing he could have turned into the roadway if he had approached it at a less rate of speed. He was at the wheel and in full control of the machinery that regulated the speed. Every reasonable deduction from the plaintiff's testimony leads

to but one conclusion—that the accident was due to the speed of the car when it entered upon Tyson avenue.

The car tracks were on the property of the defendant company, and the plaintiff had no right thereon. Electric cars on their own property have a lawful right to go fast; rapidity of transit is no longer a mere convenience to the traveler, it has become a matter of vital interest to the general business of the community: Thane v. Traction Co., 191 Pa. 249; Gallagher v. B. & O., 52 Pa. Superior Ct. 568. It is the settled law of this state that a railroad company has the right to the exclusive possession of its tracks except at crossings; and that the person who enters upon the tracks at any other point than at such crossings, is guilty of negligence per se: Bailey v. Lehigh Valley R. R. Co., 220 Pa. 516.

The motorman on this express trolley car had no reason to anticipate the plaintiff's presence on these exclusive tracks of the company, which were constructed to expedite the travel between a large city and a popular resort.

There was no grade crossing over Tyson avenue where First avenue joined it. The plaintiff's negligent management of his car placed it in the hazardous place, and without his carelessness the accident would not have happened. As said by Judge STRONG in P. & R. R. R. Co. v. Hummell, 44 Pa. 375, "If the use of a railroad is exclusively for its owners; or those acting under them; if others have no right to be upon it; if they are wrongdoers whenever they intrude, the parties lawfully using it are under no obligations to take precautions against possible injuries to intruders upon it. Ordinary care they must be held to, but they have a right to presume and act on the presumption, that those in the vicinity will not violate the laws; will not trespass upon the right of a clear track. Precaution is a duty only so far as there is reason for apprehension. No one can complain of want of care in another where care is only rendered necessary by his own wrongful act. If the law

declares, as it does, that there is no duty resting upon any person to anticipate wrongful acts in others, and to take precautions against such acts, then the jury cannot say that a failure to take such is a failure in duty and negligence. The law does not require anyone to presume that another may be negligent, much less to presume that another may be an active wrongdoer. There is as perfect a duty to guard against accidental injury to a night intruder into one's bed-chamber as there is to look out for trespassers upon a railroad where the public has no right to be." This declaration has been frequently restated and approved. In Bailey v. L. V. R. R. Co., 220 Pa. 516, it is held, "Where the public have the right to cross a railroad, the company in operation of its trains must exercise ordinary care to prevent accidents. This necessarily follows from the right of the public to cross the tracks. But at all other points, upon a railroad where the company has the exclusive right to the use of its tracks, the person who enters upon the tracks becomes a trespasser, and the only duty imposed upon the company is to refrain from wantonly injuring the trespasser. In operating trains on its road at all other places than at crossings, the company's employees in charge of the train have the right to assume that no person will enter upon the tracks, or if upon the tracks will immediately leave them upon the approach of the train. The train men may act on this presumption, and if a person trespassing on the tracks is killed, the company is not liable unless his death is caused by the wanton or willful conduct of those in charge of the train."

The same rule is declared in Eastburn v. Express Co., 225 Pa. 33; Gillespie v. Railroad Co., 226 Pa. 31. This court followed it in Gallagher v. B. & O. R. R. Co., 52 Pa. Superior Ct. 568, which is fairly summarized in the syllabus, "A railroad company has the right to the exclusive possession of its tracks, except at crossings, and a person who enters upon the tracks at any other

point than such crossings is guilty of negligence per se," and we reversed the judgment recovered in the court below for damage to a wagon standing on the tracks of a railroad without authority or right, because, "It was not alleged in the plaintiff's statement of claim, and there is no evidence that would sustain such a finding, that the defendant's employees, knowing that the plaintiff's wagon was on the track, recklessly or wantonly backed the train upon it." It was wholly insufficient to warrant an inference of the element of willfulness or wantonness, or that reckless disregard of a manifest duty and of the consequences thereof as affecting the property of the defendant, which is implied in the term gross negligence: Trexler v. B. & O. R. Co., 28 Pa. Superior Ct. 198, especially so when it is not suggested in the plaintiff's statement or sustained in the evidence offered.

The character of this defendant's tracks and equipment make the same rule applicable here, and the plaintiff being on the tracks as a trespasser by his own negligent act, it not being alleged that there was wanton or reckless operation of the car, nor any evidence of such conduct, he cannot recover when his negligence not only contributed to the result, but was the sole cause of it.

The judgment is reversed.


RICE, P. J., dissenting:

Even if it be admitted that the plaintiff was a technical trespasser on the defendant's private right of way, and that no duty rested on the defendant to keep a lookout for trespassers whose presence on the track it had no notice of or reason to expect, still it does not necessarily follow that the defendant was entitled to a verdict in its favor by binding direction. The statement of claim alleged that the plaintiff sustained damage to his property "by reason of the careless, negligent and willful disregard of the duty of said defendant" in certain particulars, which were then given, and concluded with a similar averment. There was evidence

that it was a clear night; that there was a red light on the automobile which was stalled on the track; that there was an electric light near by, that the plaintiff and a companion went back 250 or 300 feet, met the approaching car, and shouted and waved their hats to attract the motorman's attention; that at this place and time the red light on the automobile could be plainly seen; that the motorman stood with his elbows resting on the front sill of the window looking out; that he paid no heed to the warning signals; and that the speed of the car was not slackened. There was a conflict of testimony as to some of these matters, but it was the province of the jury to decide them, and to decide whether or not the motorman saw the red light on the automobile, and heard and saw the warning signals given by the plaintiff and his companion. And if they found that he did, then the question arose, whether, under these circumstances, taking into consideration the place where the defendant's private right of way was situate—in the center of a much traveled highway in a suburban residential district—the motorman exercised due care or proceeded recklessly and in willful disregard of the conditions and warnings he had seen and heard. This, also, I respectfully submit, was a question for the jury, the determination of which against the defendant would sustain a verdict in the plaintiff's favor; for I cannot agree that there was no duty to exercise care under these circumstances. Therefore, I would affirm the judgment.