Argued April 10, 1946.
In this uncontested divorce action the master who heard the case recommended a divorce for the husband *Page 379 
libellant on the ground of indignities to the person, "rendering his condition intolerable and his life burdensome". The court below refused the recommendation of the master and dismissed the libel, and this appeal followed.
The parties were married on October 8, 1931, and of this marriage two sons were born, aged 13 and 12 years at the time of the hearing. The libellant is 32 years of age and a machinist by trade. He enlisted in the United States Navy in August 1943, and at the time of the hearing on July 16, 1945, was stationed at the Naval Receiving Station in Washington, D.C. In 1941 the libellant took a job in the Canal Zone, where he remained for over a year and then returned to Titusville, where the parties had lived before and during their married life.
The libellant was the only witness in the case, and his material testimony is as follows: "We got along very well together and had no trouble of any kind until after I returned from the Canal Zone. . . . After I had been there (Canal Zone) fourteen months I resigned and came back to Titusville. . . . When I returned I found that my wife had been having an affair with a married man and was away with him at the time. When she returned, she told me that she was in love with another man and no longer cared for me and that she had consulted Attorney McDonald of Titusville regarding a divorce, that the man was also intending to obtain a divorce and that she wanted to get rid of me and marry him. Within the next few days, however, she told me that she had reconsidered and had decided to give the other man up and we went to California together and both obtained work. We left the children with my wife's mother in Titusville and after about two months my wife returned to see them. . . . After I went into the Navy I had the first furlough in December, 1943, and came home and saw my children but my wife was away and I did not see her. We corresponded regularly and I again had a furlough in March, 1944, and again came *Page 380 
home. My wife was home and admitted that she had been going with the same man and was in love with him and told me that she cared nothing at all for me, and that she wanted to marry the other man. When I was in Titusville again on a furlough in March, 1945, I learned that she had been going around with the other man since I had been there before and her attitude had not changed toward me. . . . I cared a great deal for my wife, always supported her and my family and treated her properly and never gave her any reason for her treatment of me. I felt very badly to learn that my wife no longer cared for me and was acting the way she was. It worried me to the extent that I was unable to properly concentrate on my work and made me very nervous."
As this court in Dearth v. Dearth, 141 Pa. Super. 344, at page 353, 15 A.2d 37, speaking through Judge STADTFELD, stated, "The course of conduct amounting to such indignities as would justify a divorce is apparently incapable of specific or of exact definition. Each case must necessarily depend upon its own facts. The principles applicable to the charge of `indignities to the person' have been fully and frequently set forth by this court. It is, of course, impossible to lay down any general rule as to what constitutes such indignities to the person as to render the condition of the injured spouse intolerable and life burdensome; such matters necessarily depend upon all the circumstances of the particular case and the position in life, character and disposition of the parties." In Lowe v. Lowe, 148 Pa. Super. 439, at page 442, 25 A.2d 781, President Judge KELLER said, "Conduct by a husband with respect to other women, although not sufficient to support a charge of adultery, may be considered as a form of personal indignity to his wife rendering her condition intolerable and life burdensome." (Quoted with approval by our Supreme Court in Wick v. Wick, 352 Pa. 25, at page 28,42 A.2d 76.) This statement of the law would apply, of course, *Page 381 
with equal force where the husband is the injured and innocent spouse and the wife is the wrongdoer.
A decree in divorce may be supported by the testimony of the libellant alone. Kett v. Kett, 117 Pa. Super. 236,177 A. 509; Reinhardt v. Reinhardt, 111 Pa. Super. 191,169 A. 408. The master believed the testimony of the libellant to be true. Apparently, the court below agreed, and from a reading of the record we have no cause to doubt its veracity. In its opinion, the court below stated, ". . . We are clearly of the opinion that the charge of indignities to the person of libellant rendering his life burdensome and condition intolerable cannot be sustained. The conduct of respondent with a man other than her husband may have been indiscreet so as to arouse suspicion of libellant and even jealousy, so as to render his condition more or less intolerable and life burdensome; but for such a result produced by such a cause the statutes do not confer upon the courts jurisdiction to grant a divorce. Hexamer v. Hexamer,42 Pa. Super. 226, 240."
In the Hexamer case at page 240, Judge PORTER stated, "The testimony, it may be conceded, established that the conduct of the respondent with men other than her husband had beenindiscreet and such as to arouse the suspicions, or even the jealousy, of the libellant. The pangs of jealousy may have rendered the condition of the husband intolerable and his life burdensome, but for such a result, produced by such a cause, the statutes do not confer upon the courts jurisdiction to decree a divorce." (Italics supplied.) In the case at bar, we have far more than "indiscreet" actions on the part of the wife and "pangs of jealousy". When he returned from a 14-month absence, libellant "found that my wife had been having an affair with a married man and was away with him at the time". When he came home on his first furlough, "My wife was away and I did not see her". When he was home again on a furlough in March 1945, he "learned that she had been going around with the *Page 382 
other man since I had been there before". The respondent repeatedly told her husband that she did not love him but loved the other man and that she wanted a divorce, that the other married man wanted a divorce so that they might marry. The evidence adduced in this case would not, standing alone, sustain a conviction of adultery, but certain the libellant was under no illusions as to what was taking place between his wife and the other married man when they were together, and, assuming him to be of ordinary intelligence and sensibility, such a situation as existed would undoubtedly render his condition intolerable and his life burdensome. In Smith v. Smith, 157 Pa. Super. 582, at page 586, 43 A.2d 371, Judge RENO stated, "In this tangled maze of contradictory evidence one fact stands out as clear as Mars at perihelion. Her long, intimate and public association with a Philadelphia professional man could be readily spelled out, if other testimony were lacking, upon the admissions contained in her own testimony. Although she contends that their relations were innocent and had legitimate business objectives, one need entertain no illusions concerning its purposes. It constituted an indignity, McKrell v. McKrell, 352 Pa. 173,42 A.2d 609, even though it began after the parties had separated. Wick v. Wick. 352 Pa. 25, 42 A.2d 76."
Respondent's course of conduct was humiliating, degrading and inconsistent with her position and relations as a wife, and as stated by President Judge ORLADY in Breene v. Breene, 76 Pa. Super. 568, at page 573, ". . . there must be some point, beyond which human indulgence cannot be expected to submit, and resort to the courts may rightly be had to sever a relation no longer endurable, and which makes a further living together intolerable and life burdensome." We are of the opinion that this is a case in which the libellant was justified in resorting to the courts to sever a relationship no longer endurable. *Page 383 
The order dismissing the libel is reversed, the libel is reinstated and the record is remitted to the court below with direction to enter a decree of absolute divorce.