Blansett *v.* Blansett, Appellant.

Argued November 13, 1947. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

*Carroll Caruthers,* with him *Frank A. Rugh,* for appellant.

*C. Ward Eicher,* with him *H. Reginald Belden,* for appellee.

OPINION BY DITHRICH, J., January 8, 1948:

Although respondent appellant was represented by counsel still of record in this divorce proceeding, filed an answer to the bill of particulars and joined in the motion for the appointment of a master, she did not appear either in person or by counsel at the hearing before the master. After moving for the appointment of the master she took no further step until July 25, 1947, when through counsel, other than her counsel of record, she obtained an exception to the decree in divorce *nunc pro tunc* as of May 9, 1947.

On this appeal, although the only assignment of error is the entering of the decree, appellant questions whether proper notice was given her of the hearing before the master, of the filing of the master's report, and

of the presentation of the report to the court. None of these questions was raised in the court below; they are raised here for the first time. The proper procedure for the respondent to have taken in the court below, if she actually did not have notice of the hearing before the master, would have been to petition the court to open the decree and permit her to put in her defense to the action, if any she had. See *Nixon v. Nixon,* 329 Pa. 256, 198 A. 154. Notwithstanding her failure to proceed properly in the court below or to raise by any procedure the questions here raised for the first time, this being a proceeding in which the Commonwealth is an interested party, we have examined the record with a view to determining whether any harm was done appellant, and we are convinced that there was not. The Westmoreland County Rules of Court regulating the practice in the matter of the appointment of masters were complied with.

The libel charged cruel and barbarous treatment and indignities. The master recommended that a decree be granted on the ground of indignities only, and the decree was entered accordingly. The master found, inter alia, that respondent "was carrying on an affair with one Floyd Brisbain; . . . that on one occasion she entertained the said Floyd Brisbain in their home until the early hours of the morning; that on one occasion the libellant discovered the respondent in the company of the said Floyd Brisbain, the two of them being alone at night in an automobile parked in a field; his wife and the said Brisbain being discovered by him in the back-seat of the automobile drinking; that on another occasion he followed his wife and discovered her in the company of the said Brisbain in a beer-garden in Herminie, and that on this occasion the said Brisbain threatened his life; that he requested his wife to end her association with the said Brisbain and that . . . [she] . . . refused to promise to do so and told him that she was not going to quit running around; . . ."

One Jay Hewitt testified that he was present when Brisbain threatened the life of libellant and that Brisbain "also threatened to shed his blood if he ever mentioned seeing him there [at a beer garden in Herminie] with the respondent."

One Edward Fink, a fellow-employee of libellant, testified that he had "seen Floyd Brisbain and the respondent together at least fifty times and parked in the car a lot and three or four times in different 'beer-joints.' " He also testified that it was a matter of common knowledge among libellant's fellow-employees that "his wife was running around with this other fellow," and that he was made the butt of many a joke as a result of it; that he became nervous, lost weight and couldn't work.

Our independent review of the record convinces us that the conclusions reached by the master and approved by the court are amply supported by competent testimony.

Respondent's course of conduct was humiliating, degrading, and so notorious as to make her husband the laughing stock of his fellow-employees. That is one thing a normal individual cannot stand for, and should not be made to stand for, no matter what indignities he may be required to endure before the stage is reached "beyond which human indulgence cannot be expected to submit": *Breene v. Breene,* 76 Pa. Superior Ct. 568, 573. In this case that stage was reached long before libellant sought relief from a marital life that had become intolerable and burdensome. That his wife's affair with Brisbain in itself constituted an indignity is abundantly clear, and it cannot be condoned on the ground that it was merely an "indiscretion" on her part. *McKrell v. McKrell,* 352 Pa. 173, 42 A. 2d 609; *Wick v. Wick,* 352 Pa. 25, 42 A. 2d 76; *Smith v. Smith,* 157 Pa. Superior Ct. 582, 43 A. 2d 371; *Macormac v. Macormac,* 159 Pa. Superior Ct. 378, 48 A. 2d 136.

Decree affirmed.