Phipps *v.* Phipps, Appellant.

Argued April 17, 1950; reargued May 25, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

Thomas D. McBride, with him Milton J. Kolansky and David Berger, for appellant.

Will Leach, with him Forrest J. Mervine, Leach & Lenahan, for appellee.

OPINION BY MR. JUSTICE JONES, June 27, 1951:

In this case, the libellant sued for divorce on the grounds of cruel and barbarous treatment and indignities to his person. At trial, he abandoned the cruel and barbarous treatment charge and rested his case on indignities in connection wherewith he proved, inter alia, an act of adultery on the part of the respondent. The learned trial judge entered a decree of divorce which, on appeal, the Superior Court unanimously affirmed (one judge being absent) : see Phipps v. Phipps, 165 Pa. Superior Ct. 622. We granted an allocatur primarily because of an apparent conflict between the decision in the instant case and the decision in Allen v. Allen, 165 Pa. Superior Ct. 379, with respect to whether evidence of an act of adultery is relevant and material to an issue of indignities to the person of the libellant. If such evidence is admissible in the situation indicated, then a secondary question follows as to whether the fact of adultery must have been known to the libellant prior to the institution of the divorce action in order to render such evidence competent at trial.

In Allen v. Allen the Superior Court had held that testimony of the respondent's adultery "was not admissible on the charge of indignities and should have been disregarded even though in evidence without objection." With such evidence thus excluded, the court was of the opinion that the libellant had not made out a case of indignities and reversed the decree in divorce which the trial court had granted. However, two members of the court, while concurring in the result reached by the majority, disagreed that the testimony

of the respondent's adulterous act was inadmissible and pointed out (p. 383) that the Superior Court had consistently held "that a wife's affair with another man, in itself, may constitute an indignity, and that conduct by a husband with respect to other women, although not sufficient to support a charge of adultery may be considered as a form of personal indignity to the wife rendering her condition intolerable and life burdensome", citing, inter alia, *Blansett v. Blansett,* 162 Pa. Superior Ct. 45, 48, 56 A. 2d 341, where it was said,— "That [a wife's affair with another man] constitute[s] an indignity is abundantly clear . . . ."

Why, then, may not evidence of adultery, which, as the opinion in the *Allen* case concedes, "is an indignity in its gravest form'', be relevant and material proof on an issue of indignities. The only reason contra advanced in the *Allen* case is that, by statute, adultery is made a separate and distinct ground for divorce and is of such gravity that, when established, prohibition of the marriage of the offending spouse to the paramour follows as a matter of legislative direction. Note was also made of the fact that a statute requires that the paramour be named in the libel and, as corespondent, be given notice of the charge and an opportunity to defend. But, neither the fact that adultery alone, when pleaded and proven, will justify a divorce nor the statutory provisions peculiar to such an action operate to deprive the adulterous conduct of its evidentiary value as relevant and material proof of an indignity. Cruel and barbarous treatment is also a separate ground for divorce, but evidence of the respondent's physical violence toward and threats against the life of the libellant (viz., cruel and barbarous treatment) is relevant and material to, and may be used to sustain, a charge of indignities: see *Zonies v. Zonies,* 151 Pa. Superior Ct. 317, 321-322, 30 A. 2d 193; *Sarbiewski v. Sarbiewski,* 127 Pa. Superior Ct. 463, 468, 193 A. 91;

and *Sleight v. Sleight,* 119 Pa. Superior Ct. 300, 303, 181 A. 69. The greater offense is thus material evidence of the lesser charge.

We hold, therefore, that evidence of a respondent's adultery is admissible on a charge of indignities. How far such evidence goes in helping to establish a *course of conduct,* requisite to sustaining a charge of indignities, is for the fact-finder to appraise subject, of course, to appellate review for legal sufficiency of the evidence. But, the evidence is admissible, nonetheless, even though it falls short of supporting a charge of indignities. What was said in *Allen v. Allen,* supra, in presently pertinent connection, was considerably retracted, if not entirely overruled, six months later by the Superior Court's opinion in the instant case where, as we have already mentioned, evidence of an act of adultery by the respondent was held to be admissible on a charge of indignities. The Superior Court there correctly said (p. 625),—"Counsel for respondent . . . argue that you cannot establish indignities by proving adultery. If staying together in the same room at the hotel at Stroudsburg had been the only evidence of misconduct on the part of respondent, we would readily agree; but it was not." The unanimity of the Superior Court in the instant case is peculiarly significant in view of the separate concurrence in the *Allen* case on the admissibility of evidence of the respondent's adultery.

As stated in *Martin v. Martin,* 154 Pa. Superior Ct. 313, 317, 35 A. 2d 546,—"The essential feature of the offense of indignities to the person is that it must consist of a course of conduct or continued treatment which renders the condition of the innocent party intolerable and his or her life burdensome [citing cases]." Obviously, one act of adultery is insufficient to sustain a charge of indignities even though the offense, of itself, is adequate ground for divorce on an

appropriate charge. Other misconduct of the respondent, as testified to, tending to prove indignities but which might have been extenuated as mere indiscretions or discounted as the imaginings of an overly suspicious or jealous spouse assumes its true import when pondered against the background of the respondent's deliberate and flagrant unfaithfulness to the libellant. Thus, the evidence as a whole becomes capable of constituting, as a matter of law, indignities to the person of the libellant rendering his condition intolerable and his life burdensome which is to be determined objectively.

Nor was the respondent's adulterous act any the less admissible because the libellant did not learn of it until after he had commenced his action in divorce, if such indeed be the actual fact. The importance of the evidence of adultery lies in its capacity as an aid to the fact-finder in appraising the respondent's conduct in general with respect to her husband and her treatment of him. Its admissibility, in the circumstances here present, does not depend upon whether the libellant knew of it before the separation. Of course, if he did not then know of it, it was not a *direct* indignity such as where the innocent party comes upon his offending spouse *flagrante delicto*. In *Holbrook v. Holbrook*, 160 Pa. Superior Ct. 129, 131, 150 A. 2d 709, it was expressly recognized that "Testimony as to respondent's conduct after the parties' separation is relevant for the purpose of shedding light upon respondent's behavior prior to the separation. [Citing] *Hewitt v. Hewitt*, 136 Pa. Superior Ct. 266, 7 A. 2d 45; *Zonies v. Zonies*, 151 Pa. Superior Ct. 317, 30 A. 2d 193." The question with which we are here concerned is as to the relevancy and materiality of the evidence of adultery and not as to the extent of its probative value.

The Superior Court, having considered all of the evidence including the testimony of the respondent's

adulterous conduct, unanimously affirmed the findings and conclusions of the learned trial judge who had personally heard and seen the witnesses. While it is the appellate court's duty, in the exercise of its jurisdiction in divorce cases, to carefully examine the entire record including the evidence and determine, except where there has been an issue and jury trial (*Middleton v. Middleton,* 187 Pa. 612, 615, 41 A. 291), whether on the facts the trial court reached the correct conclusion (*Nacrelli v. Nacrelli,* 288 Pa. 1, 4-5, 136 A. 228), yet it has been wisely recognized that "the findings of fact and conclusions of the trial judge, who heard the testimony and saw the witnesses, are entitled to careful consideration on appeal and will not be lightly disturbed": see *Holbrook v. Holbrook,* supra, at p. 131, and cases there cited.

The action of the Superior Court in the instant case is accordingly approved. We are not disposed under our power to allow an appeal from that court (Act of June 24, 1895, P.L. 212, Sec. 7(e), 17 PS §190), to afford a party to a divorce proceeding a second appellate de novo review. Appeals in divorce cases were, by Section 7 of the Act of May 5, 1899, P.L. 248, 17 PS §186, committed to the jurisdiction of the Superior Court. What had theretofore been the function of this court with respect to the review of the entire record, including the evidence, on the appeal of a divorce case became the province of the Superior Court. And, "It was announced by this court soon after the act creating the Superior Court went into operation that our jurisdiction to review its judgments would be exercised only in cases of general importance or to secure uniformity of decision": *Taylor v. Philadelphia Rapid Transit Company,* 245 Pa. 189, 196, 91 A. 631. See cognate pronouncement by Mr. Justice MITCHELL in *Kraemer v. Guarantee Trust & Safe Deposit Co.,* 173 Pa. 416, 418, 33 A. 1047. Whether the findings made below by the

master or judge, who saw and heard the witnesses in person, have been lightly set aside on appeal presents a question of law properly reviewable by this court in furtherance of uniformity: e. g., *Bobst v. Bobst,* 357 Pa. 441, 54 A. 2d 898; *Dash v. Dash,* 357 Pa. 125, 53 A. 2d 89; *McKrell v. McKrell,* 352 Pa. 173, 42 A. 2d 609; and *Wick v. Wick,* 352 Pa. 25, 42 A. 2d 76. Such is not the situation in this case.

The Superior Court was fully warranted in not granting the prayer of the petition for a remission of the case to the court below for the purpose of taking the testimony of the respondent's son, Bradford Sweet. His knowledge of the particular subject matter did not in any sense qualify as after-discovered evidence. What he knew and his whereabouts in Auburn, New York, where he was living with his natural father with his mother's permission, were, of course, well known to her at the time of the divorce hearings. If she desired his testimony, it could have been taken by deposition when he refused to come to Scranton to testify. The hearings extended intermittently over a period of three months during which time Bradford spent the Christmas holidays in Scranton (although unknown to his mother) visiting at the home of friends. But, even if the proffered testimony, as forecast by Sweet's affidavit and respondent's petition to remit, were received in evidence, it would be merely cumulative of testimony of the respondent and her witness Martin in attempted refutation of Jean Kehrli, a witness for the libellant, whom the trial judge and the Superior Court justifiably accredited. Moreover, the unfilial reasons to which Sweet's affidavit confesses as being the cause of his not having attended the divorce hearings tends to impeach his credibility which, no doubt, the Superior Court also took into consideration in rejecting the petition to remit.

Decree affirmed.

DISSENTING OPINION BY MR. JUSTICE ALLEN M. STEARNE:

The complaint charged personal indignities. A single clandestine act of adultery was alleged. Plaintiff, the husband, was unaware of the wife's alleged infidelity when the suit was instituted. There was no charge of adultery in the complaint.

Adultery is one of the statutory causes for divorce. So are personal indignities: Act of May 2, 1929 P. L. 1237 sec. 10, as amended, 23 PS 10. In *Allen v. Allen,* 165 Pa. Superior Ct. 379, 67 A. 2d 629, that court decided that evidence of adultery of the respondent is not admissible to establish a charge of indignities to the person of libellant. Judge HIRT said (p. 380): "Adultery in fact is an indignity in its gravest form. But the legislature wisely has seen fit to make adultery a separate and distinct cause of divorce and has prescribed a procedure appropriate to the seriousness of the charge. One of the purposes of section 9 of the Act of March 13, 1815, P. L. 150, 48 PS §169, is to prevent one, guilty of adultery, from marrying his paramour. The prohibition of that Act is not rhetoric merely; it imposes a personal incapacity on a respondent to marry the person with whom the adultery was committed. Maurer v. Maurer, 163 Pa. Superior Ct. 264, 60 A. 2d 440. Moreover, §38 of the Act of May 2, 1929, P. L. 1237, as amended, 23. PS §38, requires that such paramour be named in the libel and, as corespondent, be given notice of the charge so that the aspersion may be disproven if false. The mandates of the divorce law as to the acts, which are evidence of adultery, cannot be avoided by treating them as incidents merely of a course of conduct justifying a decree of divorce on the charge of indignities alone."

President Judge RHODES, joined by Judge DITHRICH, concurred in the result in the *Allen* case, supra, but said (p. 383): "I concur in the result reached in the majority

opinion as the evidence was insufficient to sustain libellant's charge of indignities to the person, which was the single charge in the libel. But I do not agree that the testimony of libellant that he found respondent in bed with another man on the night of November 15, 1930, was inadmissible. In Hexamer v. Hexamer, 42 Pa. Superior Ct. 226, a divorce on the grounds of cruelty and indignities was refused, although the respondent was guilty of flagrant and shocking misbehavior constituting a long course of conduct. This Court has consistently held, in subsequent decisions, that a wife's affair with another man, in itself, may constitute an indignity, and that conduct by a husband with respect to other women, although not sufficient to support a charge of adultery, may be considered as a form of personal indignity to the wife rendering her condition intolerable and life burdensome. Blansett v. Blansett, 162 Pa. Superior Ct. 45, 56 A. 2d 341; Macormac v. Macormac, 159 Pa. Superior Ct. 378, 48 A. 2d 136; Smith v. Smith, 157 Pa. Superior Ct. 582, 43 A. 2d 371; Lowe v. Lowe, 148 Pa. Superior Ct. 439, 25 A. 2d 781; Dearth v. Dearth, 141 Pa. Superior Ct. 344, 15 A. 2d 37. See, also, Wick v. Wick, 352 Pa. 25, 42 A. 2d 76; McKrell v. McKrell, 352 Pa. 173, 42 A. 2d 609."

In the case now before us, Judge DITHRICH said (p. 625).: "Counsel for respondent moved to strike the testimony of Jean Kehrli and argue that you cannot establish indignities by proving adultery. If staying together in the same room at the hotel at Stroudsburg had been the only evidence of misconduct on the part of respondent, we would readily agree; but it was not."

My review of the testimony convinces me that *without the testimony of adultery,* plaintiff has not established a case of personal indignities. It may have been most indiscreet for defendant to have stayed too long at the market with the chauffeur, or to drink with him in complainant's butler's pantry but such conduct, even

cumulative, without stronger evidence of an "affair", is insufficient proof of personal indignities.

The majority say in the opinion: "We hold, therefore, that evidence of a respondent's adultery is admissible on a charge of indignities."

With this I disagree. The Superior Court has decided that indignities cannot be established by proving adultery alone. If such testimony is inadmissible as above if standing alone, I fail to discern how it can be made admissible when coupled with other testimony.

I would reverse the decree of the Superior Court and direct that the complaint be dismissed.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

I dissent from the majority opinion and its affirmance of the decree of divorce.

The crux of this case revolves around the admissibility of the alleged adultery of the defendant at Stroudsburg on June 6, 1948. I feel very strongly that *adultery is not only adultery within the meaning of our divorce laws, but it is also a very great and shocking indignity;* and while not of itself sufficient to warrant a divorce on a complaint of "indignities to the person", it may, if known to the injured spouse, form a large and important link in a chain of indignities. Was it known to plaintiff and was evidence thereof admissible in the present case?

The Act of May 2, 1929, P.L. 1237, §10, 23 P.S. §10 provides: ". . . it shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged . . . that the other spouse . . . shall have offered such indignities to the person of the injured and innocent spouse, as to render his or her *condition intolerable and life burdensome."* \*

---

\* Italics throughout, ours.

Plaintiff commenced his suit for divorce on September 25, 1948; on November 10, 1948, pursuant to rule, plaintiff filed a bill of particulars; on December 2, 1948, the trial of this case commenced; on December 3, 1948, plaintiff filed a further bill of particulars in which he averred his wife's adultery on June 6, 1948, which he had then learned for the first time. Up to that moment defendant's conduct (as we shall see) had not made plaintiff's condition intolerable or life burdensome; how, therefore, is it possible to say, as the majority opinion does, that something which plaintiff did not know about made his condition intolerable and life burdensome?

The closest case the majority opinion has to support its conclusion is *Holbrook v. Holbrook*, 160 Pa. Superior Ct. 129, 50 A. 2d 709, from which it quotes with approval the following language: "Testimony as to respondent's conduct after the parties' separation is relevant for the purpose of shedding light upon respondent's behavior prior to the separation". In my judgment the law goes even further and holds that misconduct which occurs after the parties have separated, but before the commencement of the divorce suit, may be admissible as substantive proof of an indignity: *Wick v. Wick*, 352 Pa. 25, 33, 42 A. 2d 76; *Macormac v. Macormac*, 159 Pa. Superior Ct. 378, 382, 48 A. 2d 136. However, it seems to me both clear and obvious that under the plain language and mandatory requirements of the divorce statute neither adultery nor any other misconduct (irrespective of when it occurred) *which is unknown to plaintiff* until after he has filed an action for divorce on the ground of indignities could possibly have made his condition intolerable and life burdensome at the time or before he commenced his suit. In *Hofmann v. Hofmann*, 232 N.Y. 215, 133 N.E. 450, the Court of Appeals expressed this thought in apt language: "The consequences of adultery, the facts incident

thereto, may cruelly injure the innocent spouse, *but clandestine adultery of one of a married couple cannot in itself affect the mind or the body of the other.* If, however, the bread of illicit affection is not eaten in secret, if the adultery is open . . . [or] flaunted in the eyes of the public or dragged into the presence of the blameless wife or husband, two wrongs arise out of the act: the adultery itself . . . and cruelty . . .". It follows, therefore, that the evidence of this clandestine adultery was inadmissible.

Moreover, the authorities which construe the Divorce Act, likewise demonstrate that the evidence was inadmissible in this case.

The term "Indignities to the Person" is incapable of exact definition, but it means and requires *a course of conduct* which is sufficient to render a spouse's condition intolerable and life burdensome. A single brutal act may be sufficient to justify a divorce on the ground of Cruel and Barbarous Treatment, but is insufficient to base a decree for divorce on the ground of Indignities. Indignities include assaults and batteries, abusive or vulgar language, false and derogatory accusations, unmerited reproach, intentional incivility, studied neglect, manifest disdain, as well as all declarations and all conduct which humiliates the other spouse or holds her or him up to ridicule or contempt, or which seriously affects the health or peace of mind of the other. In other words, any unjustifiable conduct which grievously wounds or seriously affects the body or the health or the mind of the other spouse and which destroys the legitimate ends and objects of matrimony, constitutes an indignity. Each case must be judged on its own facts, and the mental and physical conditions of each of the parties and their social status or station in life are elements which may be considered in order to determine the effect which the conduct or language of that spouse would likely have upon the other: *Breene*

*v. Breene,* 76 Pa. Superior Ct. 568; *Crawford v. Crawford,* 64 Pa. Superior Ct. 30; *Elmes v. Elmes,* 9 Pa. 166; *Wick v. Wick,* 352 Pa. 25, 42 A. 2d 76; *McKrell v. McKrell,* 352 Pa. 173, 42 A. 2d 609; *Russell v. Russell,* 37 Pa. Superior Ct. 348.

In the light of the aforesaid cases, and dozens of others which could be cited, how is it possible that some conduct of which plaintiff was ignorant, could affect his mind, body or health or could make his condition intolerable and life burdensome?

I have carefully studied, as the law requires us to do, the voluminous record, including 525 pages of testimony, and if the adultery (actual or alleged) is inadmissible and is eliminated or excluded from the case, *libellant utterly failed to prove a case of indignities.*

This Court in allowing an appeal from the Superior Court in a divorce case may confine or restrict the appeal to one or more questions of law; or we may allow the appeal generally, in which event, in the language of Mr. Justice, now Chief Justice DREW, in *Dash v. Dash,* 357 Pa. 125, 126, 127, 53 A. 2d 89: "Where, as here, the action was heard by a master, *we are obliged* [except where there has been an issue and jury trial] *to make an independent investigation of the evidence in order to determine whether in truth it does establish a legal cause for divorce*: Rinoldo v. Rinoldo, 125 Pa. Superior Ct. 323, 189 A. 566; Nacrelli v. Nacrelli, 288 Pa. 1, 136 A. 228. *In making the review de novo* we have in mind that *the burden is upon libellant to prove his case by clear and satisfactory evidence,* and that there must be a preponderance of the evidence in his favor or the divorce must be refused: Sleight v. Sleight, 119 Pa. Superior Ct. 300, 181 A. 69. . . . *We have carefully considered all the evidence* and we cannot agree with the Master's findings of fact and recommendation. We think he was over-persuaded by libellant, of whose

credibility we have serious doubts. *Our independent inquiry reveals the following facts: . . . .*"

In *Bobst v. Bobst,* 357 Pa. 441, 444, 54 A. 2d 898, we said, speaking through Mr. Justice LINN: *"It is the duty of appellate courts* in divorce cases, unless there has been an issue and jury trial, *to examine the evidence de novo for the purpose of determining whether the complaint alleged in the libel has been sustained.* The scope of the court's inquiry therefore is not limited, as it is in reviewing appeals in equity or where jury trial has been waived, to examination of the record to see whether there was evidence to support the challenged findings of fact."

Moreover, in *Bobst v. Bobst,* 357 Pa. 441, 54 A. 2d 898; in *McKrell v. McKrell,* 352 Pa. 173, 42 A. 2d 609; and in *Wick v. Wick,* 352 Pa. 25, 42 A. 2d 76, *we based a reversal of the Superior Court on our independent and exhaustive study, analysis and review of the facts,* which we found were opposite or contrary to the findings of the Superior Court. In *Dash v. Dash,* 357 Pa. 125, 126, 127, 53 A. 2d 89, and in *Esenwein v. Esenwein,* 312 Pa. 77, 167 A. 350, we affirmed the Superior Court, *but only after we had made an independent study, analysis and review of the facts.* In the light of these authorities (which could be multiplied) I cannot understand how any one can doubt *our power and bounden duty* to make an independent study and analysis of the facts in order to determine whether the plaintiff clearly proved his case.

Under the evidence—if evidence of the alleged adultery be excluded—plaintiff undoubtedly failed to prove (by clear and satisfactory evidence) a case of indignities and consequently his libel or complaint must be dismissed!

If, however, we assume that the majority opinion is correct in holding that evidence of the defendant's alleged adultery was admissible and that she, the defend-

ant, was guilty of adultery, the majority's statements and conclusions with respect to the defendant's petition to remand are unjustifiable!

The decision of the trial judge was based almost entirely upon the alleged adultery of the defendant in Stroudsburg on June 6, 1948. The Superior Court likewise placed tremendous importance upon this episode. Jean testified that at Mrs. Phipps's direction she (aged 16) and Brad Sweet (son of Mrs. Phipps) occupied the room at the hotel with the twin beds, while Mrs. Phipps and the chauffeur slept in the room with the double bed. Of course this testimony was vigorously objected to by the defendant as inadmissible and hearsay. Jean's testimony was contradicted by defendant and the chauffeur, both of whom testified that the defendant and the girl occupied one room while Brad and the chauffeur occupied the other. Brad did not testify. The trial judge believed Jean, although her subsequent conduct certainly cast considerable doubt on her credibility.

Defendant presented a petition to the Superior Court requesting it to remand the record to the trial court for the purpose of taking the testimony of Brad Sweet who, according to the petition and Brad's attached affidavit, would testify to his mother's innocence and that Jean and his mother occupied one room that night and he and the chauffeur the other room. Brad's affidavit alleged in effect that libellant had bribed him not to testify and had also poisoned his mind against his mother by false stories and had induced him to keep out of the State of Pennsylvania so that he could not be subpoenaed.

The Commonwealth is in every divorce case an important and interested third party and it seems to me that bribery and suppression of evidence are matters of such importance to the Commonwealth that on this ground alone defendant's petition to remand should

have been granted. If Brad's accusations of bribery are true, plaintiff would not be entitled to a divorce and the decree in his favor would have to be set aside, even under the majority opinion which admits the testimony of Jean. The majority opinion does not discuss plaintiff's alleged bribery; it merely describes Brad's affidavit as cumulative evidence in favor of his mother and assumes that the Superior Court took this cumulative effect into consideration "in rejecting petition to remit". Unfortunately for the majority's assumption, the Superior Court did not dismiss defendant's petition or even mention the petition or the affidavit at all. Even more unjustifiable, to put it mildly, is the majority's assumption that the trial judge would disbelieve Brad and continue to believe Jean, although the trial judge had not seen Brad or heard his story.

If evidence of adultery unknown to the plaintiff is admissible, as the majority opinion holds, then in the interest of justice the majority should at least remit the record to the court below with directions to reopen the proceedings and after hearing and considering the grave accusations made by Brad Sweet, make such decision on the merits of the divorce case as may be proper and just.